MARRONE ET AL., APPELLEES, v. PHILIP MORRIS USA, INC., APPELLANT, ET AL.

[Cite as *Marrone v. Philip Morris USA, Inc.,*
110 Ohio St.3d 5, 2006-Ohio-2869.]

(No. 2004–1824—Submitted October 11, 2005—Decided June 14, 2006.)

LUNDBERG STRATTON, J.

{¶ 1} Ohio's Consumer Sales Practices Act ("CSPA") prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions. R.C. 1345.02 and 1345.03. A consumer has a cause of action and is entitled to relief for any violation of the CSPA. R.C. 1345.09. A consumer may, in an individual action, rescind the transaction or recover damages for a violation of the CSPA. R.C. 1345.09(A). However, if the violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based, or if the violation is an act or practice that was determined by a court to violate the CSPA and the court's decision was available for public inspection in accordance with R.C. 1345.05(A)(3) before the consumer transaction, the consumer may seek additional relief, including damages or other appropriate relief in a class action under Civ.R. 23. R.C. 1345.09(B).

{¶ 2} We must determine how similar the defendant's conduct must be to the conduct that was previously determined to be deceptive in order for a consumer to qualify for class-action certification under R.C. 1345.09(B) for a violation of the CSPA. For the reasons that follow, we hold that a consumer may qualify for class-action certification under Ohio's CSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B). Because the plaintiffs' claims in this case did not meet that standard, we reverse the judgment of the court of appeals.

I

{¶ 3} The plaintiffs-appellees, Catherine Marrone and Greg and Eva Phillips, filed class-action complaints against defendant-appellant, Philip Morris USA, Inc. ("PMI"), individually and on behalf of Ohio residents who purchased and smoked Virginia Slims Lights and Marlboro Lights cigarettes. They alleged fraud, unjust enrichment, and violations of the CSPA related to PMI's manufacture and sale of the "light" cigarettes. In particular, the plaintiffs alleged that PMI falsely represented the cigarettes as light to mislead smokers into believing that the cigarettes delivered lower tar and nicotine and therefore were safer than their regular counterparts, Virginia Slims and Marlboros.

{¶ 4} The plaintiffs also alleged that PMI failed to disclose that the light cigarettes delivered lower tar and nicotine levels only when tested by a machine, but not when smoked by consumers. They alleged that the smoker's lips or fingers covered or blocked microscopic vent holes on the filter of the cigarettes under normal use, thereby negating any benefits of the design. The plaintiffs also alleged that PMI intentionally manipulated the design and content of the

cigarettes to maximize, rather than lower, the amount of nicotine actually delivered during normal smoking.

{¶ 5} The plaintiffs moved for class certification. The trial court determined that they met the prerequisites to a class action under Civ.R. 23. The court certified a limited class of consumers from a six-county area in northeast Ohio on the CSPA claims only.[1] The trial court did not address R.C. 1345.09(B) or identify a rule adopted by the Attorney General or a court determination that these alleged acts or practices constituted deceptive or unconscionable practices prior to the alleged conduct.

{¶ 6} PMI appealed the judgment certifying the class. The court of appeals concluded that the plaintiffs had demonstrated that there had been prior determinations that the specific alleged conduct of PMI constituted a deceptive act or practice. The court relied on cases cited by the plaintiffs in which the defendant had represented a product to be of a certain quality or to have certain attributes that it did not: *Amato v. Gen. Motors Corp.* (1982), 11 Ohio App.3d 124, 11 OBR 203, 463 N.E.2d 625; *State ex rel. Fisher v. Natl. Information Group* (Oct. 19, 1994), Franklin C.P. No. 93CVH09–6323; *State ex rel. Celebrezze v. Hi–Lo Oil Co., Inc.* (July 31, 1985), Franklin C.P. No. 85–CV–01–518; and *Brown v. Introductions Internatl., Inc.* (Sept. 29, 1975), Lucas C.P. 74–2529. The appellate court affirmed the trial court's judgment certifying the class.

{¶ 7} This cause is before this court upon our acceptance of a discretionary appeal.

## II

{¶ 8} In order to maintain a class action, plaintiffs must meet the prerequisites set forth in Civ.R. 23. The appellate court affirmed the trial court's determination that the plaintiffs had satisfied the Civ.R. 23 elements necessary for a class action. That determination is not before us, and this opinion does not address whether the requirements of Civ.R. 23 were met. We address only the narrow issue of whether defendant had sufficient notice for purposes of R.C. 1345.09(B) that its alleged conduct was deceptive.

{¶ 9} R.C. 1345.09(B) provides that a consumer may qualify for class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable. The prior notice may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision

---

1. The claims of fraud and unjust enrichment are not part of this appeal.

made available for public inspection by the Attorney General under R.C. 1345.05(A)(3).

{¶ 10} PMI argues that the acts or practices described in the prior notice must be industry- or conduct-specific for the notice to be meaningful and to give a supplier fair warning of conduct that violates the CSPA. According to PMI, no court ruling or Attorney General rule satisfied that requirement here. PMI contends that the cigarette industry is highly regulated by the federal government, and, therefore, generic or nonspecific rules or court decisions do not provide notice for purposes of R.C. 1345.09(B).

{¶ 11} The plaintiffs, however, contend that R.C. 1345.09(B) refers only to "an act or practice" and does not require specificity. They argue that the prior notice need only be sufficient to put the offending party on notice. The plaintiffs argue that *State ex rel. Celebrezze v. Hi–Lo Oil, Inc.*, Franklin C.P. No. 85–CV–01–518, *Amato v. Gen. Motors Corp.*, 11 Ohio App.3d 124, 11 OBR 203, 463 N.E.2d 625, and Ohio Adm.Code 109:4–3–10 gave notice to PMI that its manufacturing and labeling of "light" cigarettes violated Ohio law.

{¶ 12} As discussed below, the conduct described in these cases is not substantially similar to PMI's alleged conduct, and the Administrative Code section describes a generic prohibition. Consequently, they do not provide prior notice to PMI of deceptive and unconscionable acts or practices for purposes of R.C. 1345.09(B).

### A. Publicly Available Court Decisions

{¶ 13} Prior notice may be in the form of "an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and * * * made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code." R.C. 1345.09(B).

{¶ 14} R.C. 1345.05(A)(3) provides that the Attorney General must "[m]ake available for public inspection all rules * * * together with all judgments, including supporting opinions, by courts of this state * * * determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code."

{¶ 15} *State ex rel. Celebrezze v. Hi–Lo Oil*, Franklin C.P. No. 85–CV–01–518, involved a defendant that was representing to consumers that it was selling two different grades of gasoline from two different pumps when in fact all the gasoline came from one underground tank. The trial court determined that this was a deceptive and unconscionable practice.

{¶ 16} *Amato v. Gen. Motors Corp.* involved an automobile manufacturer that allegedly sold Oldsmobile automobiles that contained engines manufactured by its Chevrolet division. The trial court certified *Amato* as a class action, finding prior notice in administrative rules that generically prohibited advertising that did not

clearly and conspicuously state any material omissions or modifications and a rule that forbade bait-and-switch tactics. *Amato,* 11 Ohio App.3d at 131, 11 OBR 203, 463 N.E.2d 625. The *Amato* court decided that, although the rules did not mention motor-vehicle parts, they were "sufficient to put a reasonable person on notice of the prohibition." Id.

{¶ 17} The appellate court held that these court decisions were "sufficient to constitute prior determinations, within the meaning of R.C. 1345.09(B)." *Marrone v. Philip Morris USA, Inc.,* Medina App. No. 03CA0120–M, 2004-Ohio-4874, ¶ 12. We disagree. These cases did not involve the cigarette or tobacco industries. The industries and conduct in these cases were too dissimilar to PMI's to have afforded PMI advance notice that its acts or practices had been declared deceptive under the CSPA.

{¶ 18} Other courts have required that the prior determination be specific and that it involve conduct similar to the alleged conduct at issue. In *Mihailoff v. Ionna* (May 6, 1987), Hamilton App. No. C–860040, 1987 WL 10889, the court concluded that a prior case involving the sale and repair of household appliances was insufficient notice for purposes of R.C. 1345.09(B) to persons in the real estate business. The court reasoned that "the specific wrongful acts and practices in the appliance business are not uniformly relevant in operative detail to acts and practices in the sale and improvement of real estate." Thus, the court concluded, the prior case did not give "fair warning in advance about deceptive or unconscionable acts."

{¶ 19} In *Lewis v. ACB Business Servs., Inc.* (C.A.6, 1998), 135 F.3d 389, the court rejected as prior notice cases involving conduct that was too dissimilar to the conduct at issue. The court reasoned that "[t]o read [the cases] as broadly as Lewis suggests and without reference to the specific acts in those cases would allow the recovery * * * under the [CSPA] whenever there is any arguable misstatement of fact, a result the Ohio courts and legislature surely did not intend." Id. at 405.

{¶ 20} In *Nicols v. R.J. Reynolds Tobacco Co.* (Aug. 9, 2000), Summit C.P. No. CV 99–11–4539, a case against another cigarette manufacturer, the trial court refused to certify the case as a class action because the plaintiff failed to satisfy the prerequisite of prior notice in R.C. 1345.09(B). Specifically, the trial court rejected the argument that Ohio Adm.Code 109:4–3–02 and 109:4–3–10 provided prior notice because neither one sets forth a specific act or conduct.

{¶ 21} We believe that these cases correctly interpret R.C. 1345.09(B). Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA. Therefore, the plaintiffs have cited no publicly available court decision that would satisfy R.C. 1345.09(B).

### B. Rule Adopted by Attorney General

{¶ 22} Prior notice may also be in the form of "an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code." R.C. 1345.09(B). R.C. 1345.05(B)(2) authorizes the Attorney General to "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02 and 1345.03 of the Revised Code." In so doing, the Attorney General must give "due consideration and great weight" to the "federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45(a)(1) of the 'Federal Trade Commission Act,' 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended." R.C. 1345.05(B)(2).

{¶ 23} The plaintiffs rely on Ohio Adm.Code 109:4–3–10, which states that it is a deceptive act or practice for a supplier to make any representations in the absence of a reasonable basis in fact. However, as did the court in *Nicols v. R.J. Reynolds,* Summit C.P. No. CV 99–11–4539, we hold that this rule is insufficient to provide prior notice under R.C. 1345.09(B) because it does not refer to any particular act or practice. A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice. To permit a generic rule to constitute prior notice for purposes of R.C. 1345.09(B) would allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice.

{¶ 24} "For class certification to be proper, the prior decision or previously promulgated rule must have put the defendant on notice that the specific conduct at issue violated" the Act. *Delahunt v. Cytodyne Technologies* (S.D.Ohio 2003), 241 F.Supp.2d 827, 837. The question before us is what degree of similarity is necessary for purposes of R.C. 1345.09(B). We hold that there must be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred. "Substantial similarity" means a similarity not in every detail, but in essential circumstances or conditions. See *W.F. Corbin & Co. v. United States* (C.A.6, 1910), 181 F. 296, 301, citing 1 Wigmore on Evidence, Section 442. "Substantial similarity" is the standard used in a variety of legal contexts, but perhaps most applicable here is the use of that standard in products-liability cases when determining whether to admit evidence of past incidents to demonstrate that a defendant had notice that its product was dangerous or defective. *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150, citing *McKinnon v. Skil Corp.* (C.A.1, 1981), 638 F.2d 270, 277; *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St.3d 346, 349–350, 15 OBR 468, 474 N.E.2d 291 (Holmes, J., concurring).

{¶ 25} The acts or practices determined to be deceptive in *Celebrezze* and *Amato* are not substantially similar to the allegations against PMI. Ohio Adm. Code 109:4–3–10 is a generic prohibition that does not refer to any specific act or practice. Consequently, the plaintiffs failed to identify any prior rule or court decision that would have put PMI on notice that its conduct violated the CSPA.

## III

{¶ 26} The absence of prior rules or court decisions that address the cigarette industry may be due in part to the comprehensive regulations of the industry by the Federal Trade Commission ("FTC"). Ohio's consumer-protection laws defer to FTC pronouncements, R.C. 1345.11(B) and 1345.05(B)(2), and such deference is particularly appropriate here, given the expertise that the FTC has developed in the past 70 years of regulating the tobacco industry, see *Flanagan v. Altria Group, Inc.* (Oct. 25, 2005), E.D.Mich.S.D. No. 05–71697, 2005 WL 2769010, *3. Part of that comprehensive regulation calls for the FTC to oversee the testing methods and advertisements that are implicated by the plaintiffs' claims.[2]

{¶ 27} As other courts have recognized, the FTC persuaded all cigarette manufacturers to agree to use the identical testing method for measuring the amount of tar and nicotine in cigarettes. See, e.g., *Flanagan,* 2005 WL 2769010 at *3–4. That testing method is the same test that the putative class complains of here. It is well established that the FTC recognized that no one test could accurately determine the amount of tar and nicotine to which an "average" smoker would be exposed, but it also recognized that if one standardized test was used by all cigarette manufacturers, then consumers could compare the tar and nicotine amounts of different brands. See *Price v. Philip Morris, Inc.* (2005), 219 Ill.2d 182, 189–190, 848 N.E.2d 1 ("The record is clear that both the FTC and the cigarette manufacturers were aware [at the time the FTC adopted the standard method ('the FTC method')] that no method of measurement, including the FTC method, could accurately predict the actual exposure of individual smokers who smoked any particular brand of cigarette"); *Virden v. Altria Group, Inc.* (N.D.W.Va.2004), 304 F.Supp.2d 832, 839, quoting FTC News Release (Aug. 1, 1967), "FTC to Begin Cigarette Testing" ("The FTC further noted that, because '[n]o two human smokers smoke in the same way,' the 'FTC Method' was not an attempt 'to gauge the test to the amount of smoke, or tar and nicotine, which the "average" smoker will draw from any particular cigarette' "); *Watson v. Philip*

---

2. Indeed, Congress has expressly preempted any prohibition by the states on the advertising or promoting of cigarettes. See Federal Cigarette Labeling and Advertising Act, Sections 1331 and 1334(b), Title 15, U.S.Code; *Lorillard Tobacco Co. v. Reilly* (2001), 533 U.S. 525, 545–546, 121 S.Ct. 2404, 150 L.Ed.2d 532.

*Morris Cos., Inc.* (C.A.8, 2005), 420 F.3d 852, 855 ("From its initial development, the FTC was aware that the testing method did not measure the amount of tar or nicotine that an individual smoker may receive. The purpose of the test was not to replicate human smoking but to provide a basis for comparison"); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm.* (C.A.6, 1983), 710 F.2d 1165, 1168 ("The FTC method was never intended to provide precise measurements of 'tar' and nicotine delivery to each smoker because consumers smoke cigarettes in different fashions. Instead, the tests were designed to provide consumers with figures by which to compare the many brands of cigarettes on the market").

{¶ 28} Despite its knowledge that the test did not accurately reflect the amount of tar and nicotine a smoker would consume, the FTC required that the measurements obtained through such testing be reported in all cigarette advertisements. *Watson*, 420 F.3d at 858–860; *Flanagan*, 2005 WL 2769010 at *5. And although the FTC is well aware of the years of litigation and debate over cigarette manufacturers' marketing strategies, to date it has not directed manufacturers to refrain from using quantifier adjectives—terms such as "low," "lower," and "reduced"—in describing tar and nicotine levels in advertisements for their cigarettes. *Watson*, 420 F.3d at 861–862; *Flanagan*, 2005 WL 2769010 at *3–5.

{¶ 29} Although it appears that the FTC has neither permitted nor forbidden characterizations like "low" tar, *Flanagan*, 2005 WL 2769010 at *4–5, the information about average tar and nicotine levels used in the advertisements comes directly from testing practices that are "required or specifically permitted by federal trade commission orders [and] trade regulation rules and guides." See R.C. 1345.11(B). Because the cigarette industry is highly regulated by the federal government, PMI was obligated to follow federal mandates and standards for light cigarettes.

## IV

{¶ 30} The ultimate question in this litigation is whether, notwithstanding the FTC's imprimatur on those testing methods, PMI used the data to deliberately deceive consumers into believing that Marlboro Lights and Virginia Slims Lights are safer than other cigarettes. That issue is not before us, and our opinion should not be read to suggest that we find that the conduct at issue was deceptive or otherwise violated Ohio law. The plaintiffs may be entitled to pursue class-action relief under Civ.R. 23; however, they have failed to identify any prior rule or court decision that would entitle them to pursue CSPA relief under R.C. 1345.09(B).

{¶ 31} In conclusion, we hold that the court of appeals erred in determining that there had been a prior determination that conduct sufficiently similar to the alleged acts of PMI violated R.C. 1345.02 or 1345.03. We hold that to satisfy R.C. 1345.09(B), a plaintiff must show that the defendant's alleged conduct is substantially similar to an act or practice that was previously declared to be deceptive. The plaintiffs do not meet that standard to qualify for class-action certification under R.C. 1345.09(B). Therefore, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

GRADY and LANZINGER, JJ., concur in part and dissent in part.

PFEIFER, J., dissents.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for RESNICK, J.

---

**GRADY, J., concurring in part and dissenting in part.**

{¶ 32} I write separately because I believe that imposing a "substantially similar" test for the relief that R.C. 1345.09(B) offers consumers creates a standard that undermines, at least in part, the General Assembly's purposes when it enacted that section as part of the greater regulatory framework of Ohio's Consumer Sales Practices Act.

{¶ 33} The Consumer Sales Practices Act, R.C. 1345.01 et seq., is modeled on the Uniform Consumer Sales Practices Act ("Uniform Act") promulgated by the National Conference of Commissioners on Uniform State Laws in 1970. See 7A, Part I, Uniform Laws Annotated, Business and Financial Laws (Master Ed.2002), Uniform Consumer Sales Practices Act, 71. A stated purpose of the Uniform Act is "to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection." Section 1(4), Uniform Act.

{¶ 34} Like Section 5 of the Federal Trade Commission Act, Section 45, Title 15, U.S.Code, Section 3(a) of the Uniform Act prohibits a supplier from committing a "deceptive act or practice" in consumer transactions. Unlike the Federal Trade Commission Act, however, the Uniform Act allows consumers to bring private actions for relief arising from violations committed by suppliers. Section 11, Uniform Act. Ohio's Act contains like provisions at R.C. 1345.02 and 1345.03, which prohibit "unfair or deceptive" and "unconscionable" acts or practices, respectively, and at R.C. 1345.09(A) and (B), which confer private rights of relief on affected consumers.

{¶ 35} The Uniform Act also directs a state's "Enforcing Authority" to maintain a digest of judgments rendered by courts of the state finding that particular acts or practices are unfair or deceptive. Section 5(a)(5), Uniform Act. The enforcing authority is also directed to promulgate rules prohibiting acts or practices that are deceptive. Section 6(b), Uniform Act. This rule-making authority corresponds to the rule-making powers conferred on the Federal Trade Commission by the Wheeler–Lea Act, which made amendments to the Federal Trade Commission Act in 1938. Section 45, Title 15, U.S.Code; Chapter 49, Section 3, 52 Stat. 111 (1938).

{¶ 36} Under R.C. 1345.05, the Attorney General of Ohio is the enforcing authority of the Consumer Sales Practices Act. R.C. 1345.05(A)(3) mandates that the Attorney General shall make available for public inspection "all judgments * * * by courts of this state * * * determining that specific acts or practices violate section 1345.02 or 1345.03 of the Revised Code." The Attorney General maintains a "Public Inspection File" containing a number of such judgments. R.C. 1345.05(B)(2), which is permissive, further authorizes the Attorney General to "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02 and 1345.03 of the Revised Code." [3]

{¶ 37} R.C. 1345.09(A) permits consumers to seek awards of actual damages "in an individual action." Subsection (B) of R.C. 1345.09 states:

{¶ 38} "Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages

---

3. A number of such rules have been adopted by the Attorney General. They include rules prohibiting failure to disclose material exclusions and limitations in advertisements (Ohio Adm.Code 109:4–3–02), bait-and-switch advertising (Ohio Adm.Code 109:4–3–03), misuse of the word "free" (Ohio Adm.Code 109:4–3–04), failure to provide a prior estimate of repair costs on a prescribed form (Ohio Adm.Code 109:4–3–05), failure to disclose consideration required to receive a prize (Ohio Adm.Code 109:4–3–06), failure to honor a deposit (Ohio Adm.Code 109:4–3–07), misrepresenting used products as new (Ohio Adm.Code 109:4–3–08), failure to deliver represented goods or services (Ohio Adm.Code 109:4–3–09), failure to have substantiation for factual claims made (Ohio Adm.Code 109:4–3–10), misconduct in direct solicitation (Ohio Adm.Code 109:4–3–11), deceptive price comparisons (Ohio Adm.Code 109:4–3–12), and misrepresentation of "distress sales" (Ohio Adm.Code 109:4–3–17).

or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."

{¶ 39} The majority opinion reverses the class certification that the trial court ordered and imposes a "substantially similar" test, requiring consumers to show that an alleged act or practice is substantially similar to one that was previously declared to violate R.C. 1345.02 or 1345.03.

{¶ 40} While it is somewhat vague, the substantially-similar test is workable in relation to the judgments that the Attorney General includes in his Public Inspection File because an act or practice can readily be compared to the specific act or practice the prior judgment involved. The test is necessarily industry- and product-specific and in that respect corresponds in concept to the Federal Trade Commission's industry-guide program. A guide explains to members of an industry how the Federal Trade Commission Act applies to prohibit specific acts or practices. Currently, Federal Trade Commission guides identify unfair or deceptive acts or practices in 27 specific industries. See, generally, 1 Kanwit, Federal Trade Commission (2001), Sections 6.01–6.03. Pertinent to the acts or practices that this litigation involves are the Federal Trade Commission's "Cigarette Advertising Guides," which were promulgated in 1955.[4]

{¶ 41} The substantially-similar test, because it necessarily implies a comparison to a specific prior act or practice, does not so readily apply to rules promulgated by the Attorney General pursuant to R.C. 1345.05(B)(2), which are instead generic and not limited to specific products or industries, and need only "defin[e] with reasonable specificity acts or practices that violate sections 1345.02 and 1345.03 of the Revised Code." Such rules typically identify particular species of acts or practices that violate R.C. 1345.02 or 1345.03, without specifying a product or industry the consumer transaction must involve.

{¶ 42} In enacting R.C. 1345.09(B), the General Assembly created an enforcement mechanism, one not only of monetary benefit to consumers but also designed to achieve the purposes of Ohio's Consumer Sales Practices Act. This court has held:

{¶ 43} "In construing [R.C. 1345.09 and 1345.10] we are guided by the longstanding rule ' " * * * that the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute, it is inserted to accomplish some definite purpose." ' *Brown v. Martinelli* (1981), 66 Ohio St.2d 45, 50 [20 O.O.3d 38, 419 N.E.2d 1081, quoting *State ex rel. Cleveland Elec. Illum. Co. v. Euclid* (1959), 169 Ohio St. 476, 479, 8 O.O.2d 480, 159 N.E.2d 756]. 'The General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts,

---

4. FTC Release, Sept. 22, 1955, 6 Trade Reg. Rep. ¶ 39012 at 41602.

if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result.' *Canton v. Imperial Bowling Lanes* (1968), 16 Ohio St.2d 47 [45 O.O.2d 327, 242 N.E.2d 566], paragraph four of the syllabus." *Celebrezze v. Hughes* (1985), 18 Ohio St.3d 71, 74, 18 OBR 102, 479 N.E.2d 886.

{¶ 44} As applied to acts or practices that allegedly violate generic but reasonably specific rules promulgated by the Attorney General pursuant to R.C. 1345.05(B)(2), the substantially-similar test imposes an unworkable comparative analysis that effectively prevents consumers from using those generic rules as a basis for the relief that R.C. 1345.09(B) authorizes. The General Assembly would not have made rule violations a basis for R.C. 1345.09(B) actions had it intended that a substantially-similar test be used. Therefore, I dissent from the majority's decision to that extent.

{¶ 45} In seeking class certification for alleged Consumer Sales Practices Act violations by Philip Morris, Inc., appellees rely on two prior judgments contained in the Attorney General's Public Inspection File and a rule promulgated by the Attorney General.

{¶ 46} Appellees rely on *Amato v. Gen. Motors Corp.* (1982), 11 Ohio App.3d 124, 11 OBR 203, 463 N.E.2d 625, and *State ex rel. Celebrezze v. Hi–Lo Oil Co., Inc.* (July 31, 1985), Franklin C.P. No. 85–CV–01–518. In *Amato,* the defendant installed Chevrolet engines in its Oldsmobile cars. In *Hi–Lo,* a gasoline retailer sold both premium- and regular-priced gasoline from a common underground tank. Appellees draw an analogy between those acts or practices and Philip Morris's alleged practice of putting the same tobacco in both its regular and "light" Marlboro and Virginia Slims brands. However, Philip Morris's alleged act or practice involves a wholly different product and industry than were involved in *Amato* and *Hi–Lo*. Therefore, applying the substantially-similar test, neither of those prior judgments is a basis for class certification.

{¶ 47} Appellees also rely on Ohio Adm.Code 109:4–3–10. That rule, promulgated by the Attorney General, prohibits failure to have substantiation for factual claims made concerning a supplier's product or service. The trial court did not address the application of Ohio Adm.Code 109:4–3–10 to appellees' class-certification request.

{¶ 48} Being generic, but nevertheless reasonably specific, the substantiation requirement of Ohio Adm.Code 109:4–3–10 may apply to Philip Morris's marketing of its cigarettes. However, as appellees concede, the mainstream smoke of the company's Marlboro Lights and Virginia Slims Lights cigarettes produces lower levels of tar and nicotine than the mainstream smoke of its regular brands bearing those names when tested under the testing methods approved by the Federal Trade Commission. Philip Morris, in opposing class certification, points

to a consent decree issued by the Federal Trade Commission resolving an action against the cigarette manufacturer American Brands that holds that terms such as "low" or "lower" may be used to reflect the tar and nicotine levels relative to other brands of cigarettes. *In re Am. Brands* (1971), 79 FTC 255, 1971 WL 128779. Use of the term "lights" carries the same connotation, according to Philip Morris.

{¶ 49} The Federal Trade Commission has jurisdiction in matters involving the labeling and advertising of cigarettes. *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 513, 112 S.Ct. 2608, 120 L.Ed.2d 407. In that connection, the agency has given great weight to its approved testing methods as a basis for comparative representations concerning tar and nicotine levels. *Watson v. Philip Morris Cos., Inc.* (C.A.8, 2005), 420 F.3d 852, 855–860. R.C. 1345.02(C) directs the courts to "give due consideration and great weight to federal trade commission orders, trade regulation rules and guides" when determining whether a supplier has committed an unfair or deceptive act or practice. R.C. 1345.11(B)(2) states that a showing "by a preponderance of the evidence that a violation [of R.C. 1345.02 or 1345.03] was an act or practice required or specifically permitted by federal trade commission orders [or] trade regulation rules or guides" constitutes an affirmative defense to a claim brought pursuant to R.C. 1345.09.

{¶ 50} In their totality, the foregoing provisions could doom appellees' request for class certification as well as their underlying claim for relief. However, those are determinations that the trial court should make. Like the majority, I would reverse the class certification ordered, but I would remand the cause for further proceedings on the issue of class certification in relation to the substantiation requirement on which appellees rely.

Lanzinger, J., concurs in the foregoing opinion.

---

Pfeifer, J., dissenting.

{¶ 51} How much notice does a company need to know that it is not allowed to "ma[k]e a misleading statement of opinion on which the consumer [is] likely to rely to his detriment"? R.C. 1345.03(6). According to the majority opinion, R.C. 1345.09(B) requires that a company receive notice from a published court opinion or a rule of the Attorney General that a similar industry-specific practice is deceptive or unconscionable before a class-action lawsuit can be pursued. The majority opinion's unconscionably narrow reading of R.C. 1345.09 severely limits the ability of consumers to bring a class-action lawsuit under Ohio's Consumer Sales Practices Act ("CSPA").

{¶ 52} The CSPA does not require industry-specific notice, and neither should this court. This court should interpret the CSPA to "[p]rotect consumers from

suppliers who \* \* \* commit deceptive acts or practices, or commit unconscionable acts or practices." Ohio Adm.Code 109:4–3–01(A)(2)(b). Instead, it has in effect immunized companies from class-action lawsuits by the people they deceive. Because many violations of the CSPA involve only limited or de minimus damages, an unfortunate consequence of this court's decision is that many deceived parties will have no recourse against the company that deceived them.

{¶ 53} In this case, it is alleged that Philip Morris USA, Inc. ("PMI") sold cigarettes that it characterized as "low tar" and "light," even though it knew that the cigarettes delivered as much tar and nicotine as regular cigarettes. In *State ex rel. Celebrezze v. Hi–Lo Oil Co., Inc.* (July 31, 1985), Franklin C.P. No. 85–CV–01–518, a court determined, unsurprisingly, that selling gasoline from one underground tank as two distinct gasoline products with different costs per gallon and octane ratings is a deceptive practice. Does anyone seriously doubt whether this published opinion put PMI on notice that it could not characterize cigarettes as "light" and sell them as such when it knew that the cigarettes were not light? If PMI acted as alleged, it knew that it was being deceptive and it knew that another company, albeit in a different business, had been found liable for a similar deceptive or unconscionable practice.

{¶ 54} As I construe the majority opinion, a company that sells gasoline is on notice that it may not characterize gasoline as "low tar" or "light" and sell it as such if it is not low tar or light. A company selling gasoline would be on notice that such a practice is sufficiently similar to the deceptive practice in *Hi–Lo Oil Co.* But companies in other businesses are apparently not on notice that making false characterizations is deceptive. And they won't be until a court in this state rules that a company in their industry committed a deceptive practice.

{¶ 55} One last thing: it is unclear just how similar the act that has previously been determined to be deceptive has to be to the act in question in order to qualify as notice. Perhaps deception about pricing is insufficiently similar to deception about quality to put a company on notice for class-action purposes. Perhaps a woman's deceiving a customer is insufficiently similar to a man's deceiving a customer. Perhaps deceiving a customer about a Honda is insufficiently similar to deceiving a customer about a Ford. We'll just have to wait and see.

{¶ 56} In my opinion, selling a product as one thing when it is in fact another is sufficiently similar to selling a product as one thing when it is in fact another. I would certify the class and allow the plaintiffs to proceed to trial. To do otherwise is to encourage everyone doing business in this state to engage in deceptive practices. I dissent.

Chester, Wilcox & Saxbe and Charles R. Saxbe; Amer Cunningham Co., L.P.A., and Jack Morrison Jr.; Smoger & Associates and Gerson H. Smoger; Russell Smith and Bryan Nace; and Murdock, Goldenberg, Schneider & Groh and John C. Murdock, for appellees.

Tucker, Ellis & West, L.L.P., and Irene C. Keyse–Walker; and Dechert, L.L.P., Robert C. Heim, Judy L. Leone, Ezra D. Rosenberg, and Ronni E. Fuchs, for appellant.

Squire, Sanders & Dempsey, L.L.P., and William M. Todd; and Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra, and Vladimir P. Belo, urging reversal for amici curiae Ohio Chamber of Commerce, the Ohio Manufacturers Association, and the National Federation of Independent Business/Ohio.

Stacy Canan and Michael Schuster; and Cooper & Walinski, L.P.A., and Richard S. Walinski, urging affirmance for amici curiae AARP and American Cancer Society.