WHITAKER, APPELLANT, *v.* M.T. AUTOMOTIVE, INC., D.B.A. MONTROSE TOYOTA, APPELLEE.

[Cite as *Whitaker v. M.T. Automotive, Inc.,* 111 Ohio St.3d 177, 2006-Ohio-5481.]

(No. 2005–0331—Submitted January 11, 2006—Decided November 8, 2006.)

LANZINGER, J.

{¶ 1} We accepted this case as a discretionary appeal to clarify what damages are available under R.C. 1345.09, the private-remedy section of Ohio's Consumer Sales Practice Act ("CSPA").

Facts

{¶ 2} This dispute, which is between appellant, Craig Whitaker, and appellee, M.T. Automotive, Inc., a car dealership doing business as Montrose Toyota ("Montrose"), arose from Whitaker's attempt to lease a vehicle from Montrose in October 2001. Whitaker initially intended to purchase a used truck from Montrose. After discussing the maximum monthly payment that Whitaker was willing to make, one of Montrose's salesmen suggested that Whitaker lease, rather than buy, a truck. The salesman told Whitaker that based on his credit report, the lease should be approved. Whitaker wanted to check with his credit union for financing before signing the lease and gave the salesman a $200 deposit.

{¶ 3} Discovering that his credit union would finance a lease only on a new rather than a used truck, Whitaker called Montrose to tell them he was no longer interested. Montrose's credit manager asked Whitaker whether he would be interested in leasing the truck if Montrose could find a bank to finance a lease for $230 a month. Whitaker said he would, and later that day agreed to lease the truck for that amount. The credit manager prepared several documents including a "spot delivery"[1] agreement, a lease agreement, and a vehicle-service agreement, all of which Whitaker signed. Whitaker informed the credit manager that he would come back in two days to pick up the truck.

{¶ 4} After selling his own truck, Whitaker returned to Montrose. He paid an additional $1,337, which, together with the earlier $200, was his deposit on the lease. Before Whitaker took the leased truck, he arranged to bring it back to Montrose the following Monday for repair of some scratches. He explained that he had already sold his old truck and would need to borrow one of Montrose's vehicles while the scratches were being fixed. Whitaker then left with the leased truck and had a new stereo installed that weekend.

{¶ 5} The following Tuesday, when Whitaker went to pick up the truck from Montrose following the scratch repairs, he was told that he needed to sign a few more documents. Montrose's business manager told Whitaker that several banks had refused to approve the lease financing but that the dealership finally had found a bank to finance the truck's purchase with payments of $297 per month. When Whitaker refused that deal, it was suggested that he find a cosigner on the lease. The next day, Whitaker's father, as cosigner, was presented with lease papers that increased the monthly payments from $230 to $240 and changed certain favorable terms.

---

1. In a "spot delivery agreement" the seller agrees to let the buyer take a vehicle before the buyer receives financing approval and the buyer agrees to return the vehicle to the seller if financing is not approved.

{¶ 6} Because Whitaker would not agree to the increased payments, the business manager declared the deal over and took the truck. Whitaker was told that his deposit would not be refunded because he had broken the contract. When Whitaker returned to Montrose a few days later with the duplicate keys and the original truck radio as instructed, the truck's upgraded stereo that he had installed was missing from the dealership.

{¶ 7} Whitaker tried unsuccessfully to recover his deposit and his radio. He borrowed money from his parents for a down payment on a new truck, which he received approximately ten weeks later, and then sued Montrose for violations of R.C. Chapter 1345, the Ohio Consumer Sales Practices Act ("CSPA"), and for breach of contract, conversion, and fraud. After Whitaker filed the complaint, Montrose returned his deposit.

{¶ 8} The case proceeded to jury trial. Montrose received a directed verdict on the fraud claim, and Whitaker withdrew his claim for breach of contract. The jury returned a verdict for Whitaker in the amount of $367.15 for the conversion of his stereo. It also determined that Montrose had knowingly committed 11 separate violations of the CSPA. For the CSPA violations, the jury awarded Whitaker $105,000 in a general verdict. The trial court, after finding that R.C. 1345.09(B) was satisfied, trebled the CSPA award to $315,000 and awarded $155,056.70 in attorney fees and case expenses.

{¶ 9} Montrose appealed the CSPA damage award, the awarding of treble damages, and the award of attorney fees, but did not appeal the findings of CSPA violations and conversion.[2] Focusing on damages, Montrose argued that "Whitaker failed to present evidence that he incurred any 'actual or real loss or injury' as a result of any claimed violation" of the CSPA. Whitaker responded that he had presented sufficient evidence of both economic and noneconomic damages. The Ninth District Court of Appeals determined, first, that Whitaker could not recover noneconomic damages under the CSPA and, second, that there was insufficient evidence of economic loss.[3] It therefore reversed the trial court's judgment on the CSPA claim and instructed the trial court to issue a judgment awarding statutory damages pursuant to R.C. 1345.09(B).[4]

---

2. The appellate court affirmed the propriety of the directed verdict on the fraud claim from which Whitaker had cross-appealed. Although Whitaker offers this issue in his brief before this court, because he failed to raise it in his jurisdictional memorandum, it will not be addressed. See *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 87, 572 N.E.2d 673.

3. Whitaker's appeal to this court does not address the holding on economic damages, but focuses on whether it was improper for noneconomic damages to have been excluded from consideration.

4. Although the appellate court also reversed the award of attorney fees and remanded the cause for the trial court to clearly set forth the basis for the amount awarded, that portion of the judgment is not before us.

### Damages under the Consumer Sales Practices Act

{¶ 10} Although we have addressed the CSPA before,[5] this is the first time we have accepted an appeal that asks us to explain what damages are available under R.C. Chapter 1345 and, specifically, whether noneconomic damages are included. The CSPA "prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C. 1345.02 and 1345.03. In general, the CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 24.

{¶ 11} The CSPA "is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933. One of its purposes is to make "private enforcement of the CSPA attractive to consumers who otherwise might not be able to afford or justify the cost of prosecuting an alleged CSPA violation, which, in turn, works to discourage CSPA violations in the first place via the threat of liability for damages and attorney fees." *Parker v. I&F Insulation Co., Inc.* (2000), 89 Ohio St.3d 261, 268, 730 N.E.2d 972.

### Private Remedies for Violation of the Consumer Sales Practices Act—R.C. 1345.09

{¶ 12} As part of the overall statutory scheme, R.C. 1345.09 provides the consumer remedies available for a CSPA violation, including rescission, damages, and equitable relief. The customer may rescind the transaction within a reasonable time or seek damages, which, in certain situations, may include treble damages or statutory damages of $200, whichever is greater. R.C. 1345.09(A) through (C). Equitable relief includes declaratory judgment and injunctions. R.C. 1345.09(D). Class actions are possible under R.C. 1345.09(B), and attorney fees may also be awarded, pursuant to R.C. 1345.09(F).

### Unrestricted Damages—R.C. 1345.09(A)

{¶ 13} R.C. 1345.09(A) states: "Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages." The CSPA

---

5. See, e.g., *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31; *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791; *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061; *Parker v. I&F Insulation Co.* (2000), 89 Ohio St.3d 261, 730 N.E.2d 972; *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933; *Celebrezze v. Hughes* (1985), 18 Ohio St.3d 71, 18 OBR 102, 479 N.E.2d 886.

was amended in 1978, and, among other changes, the word "actual" was removed from the previous version's use of the term "actual damages" in R.C. 1345.09(A). Am.Sub.H.B. No. 681, 137 Ohio Laws, Part II, 3219, 3226–3228. The title of the act stated that the intent was "to prevent unfair, deceptive, and unconscionable acts and practices, to provide strong and effective remedies, both public and private, to assure that consumers will recover *any damages* caused by such acts and practices, and to eliminate any monetary incentives for suppliers to engage in such acts and practices." (Emphasis added.) Id. at 3219.

{¶ 14} When the word "damages" is used without modification, we have held that the term is broad in scope. " 'Damages,' absent a restrictive modifier like 'compensatory,' 'actual,' 'consequential' or 'punitive,' is an inclusive term embracing the panoply of legally recognized pecuniary relief." *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704. N.E.2d 1217. In addition, we have consistently held that "[t]he fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained." *Fantozzi v. Sandusky Cement Prods. Co.* (1992), 64 Ohio St.3d 601, 612, 597 N.E.2d 474.

{¶ 15} In assessing the language employed by the General Assembly, the court takes words at their usual, normal, or customary meaning. *Rice,* 84 Ohio St.3d at 419, 704 N.E.2d 1217. "Most important, it is the court's duty to 'give effect to the words used [and to refrain from] insert[ing] words not used.' " Id., quoting *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund* (1994), 69 Ohio St.3d 409, 412, 632 N.E.2d 1292. In order to exclude noneconomic damages from R.C. 1345.09, we would have to read the term "pecuniary" or "monetary" or "out-of-pocket expenses" into the statute. Therefore, we hold that in an action brought under the CSPA, all forms of compensatory relief, including noneconomic damages, are included within the unrestricted term "damages" under R.C. 1345.09(A).

### Trebling of "Actual Damages"—R.C. 1345.09(B)

{¶ 16} The trial court trebled the general verdict on Whitaker's CSPA claims. R.C. 1345.09(B) states: "Where the violation was an act or practice declared to be deceptive or unconscionable by rule * * * or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision * * * has been made available for public inspection * * *, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his *actual damages* or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended." (Emphasis added.) Because only "actual damages" are subject to trebling pursuant to R.C. 1345.09(B), we must determine whether "noneconomic damages" are included in the category.

{¶ 17} We first observe that statutory damages in the amount of $200 are an alternative to actual damages, and, thus, $200 is the minimum award for a CSPA violation under R.C. 1345.09(B). In other words, if actual damages are not proven or if three times the consumer's damages is less than $200, then $200 will be awarded.

{¶ 18} " 'Actual damages' are defined as 'real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury.' " *Crow v. Fred Martin Motor Co.*, 9th Dist. No. 21128, 2003-Ohio-1293, 2003 WL 1240119, at ¶ 32, quoting Black's Law Dictionary (6th Ed.1990) 390. When considering whether noneconomic harm may be included as part of "actual damages," this court has stated that " '[a]ctual damages' is a term synonymous with compensatory damages, and covers all loss recoverable as a matter of right." *Mouse v. Cent. Sav. & Trust Co.* (1929), 120 Ohio St. 599, 610, 167 N.E. 868. Likewise, the Supreme Court of the United States has stated that "[c]ompensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered, neither more nor less * * *." *Birdsall v. Coolidge* (1876), 93 U.S. 64, 23 L.Ed. 802.

{¶ 19} In *Fantozzi*, 64 Ohio St.3d at 612, 597 N.E.2d 474, we defined "compensatory damages" in such a way that it includes both economic and noneconomic damages: "Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefor. For example, compensatory damages may, among other allowable elements, encompass direct pecuniary loss, such as hospital and other medical expenses immediately resulting from the injury, or loss of time or money from the injury, loss due to the permanency of the injuries, disabilities or disfigurement, and physical and mental pain and suffering." Usually awarded for pain and suffering, noneconomic damages can also include compensation for loss of ability to perform usual functions;[6] loss of consortium, mental anguish, or other intangible loss;[7] and humiliation or embarrassment.[8] R.C. 2307.011(E) defines "noneconomic loss" as "nonpecuniary harm that results from an injury, death, or loss to person that is a subject of a tort action, including, but not limited to, pain and suffering; loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education; mental anguish; and any other intangible loss."

---

6. See *Fantozzi*, 64 Ohio St.3d 601, 597 N.E.2d 474, paragraph two of the syllabus.

7. *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 425, 644 N.E.2d 298.

8. *Mason v. Rainbow Rentals*, 2d Dist. No. 19561, 2004-Ohio-265, 2004 WL 102873.

{¶ 20} Noneconomic damages have been included in awards of actual damages under the CSPA. *Damask v. Modern Communications, Ltd.* (Sept. 13, 2000), Lucas C.P. No. CI–99–3859, 2000 WL 33182259 (damages for inconvenience, aggravation, frustration, and humiliation for misrepresentations and attempts to collect an invalid debt); *Becker v. Montgomery, Lynch* (Feb. 26, 2003), N.D.Ohio No. Civ.A. 1:02CV 874, 2003 WL 23335929 (damages for frustration, aggravation, humiliation, embarrassment, and inconvenience for misleading collection letter); *Lamb v. M & M Assoc., Inc.* (Sept. 1, 1998), S.D.Ohio No. C–3–96–463, 1998 WL 34288694 (evidence of plaintiff's mental stress prevented summary judgment on issue of actual damages).

{¶ 21} Courts interpreting comparable federal consumer-protection laws have also stated that noneconomic damages may be included in actual damages. *Casella v. Equifax Credit Information Servs.* (C.A.2, 1995), 56 F.3d 469, 474 ("actual damages" may include damages for humiliation and mental distress, even in the absence of out-of-pocket expenses, for violation of the Fair Credit Reporting Act); *Bach v. First Union Natl. Bank* (C.A.6, 2005), 149 Fed.Appx. 354 (actual damages for violation of the Fair Credit Reporting Act may include damages for humiliation and mental distress); *Butler v. Sterling, Inc.* (Mar. 31, 2000), C.A.6 No. 98–3223 (a persuasive argument exists that consequential damages for emotional distress or humiliation are available as part of actual damages for a violation of the Truth in Lending Act); *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.* (June 9, 2005), S.D.Ohio E.D. No. 2:02CV0743, 2005 WL 1379107 ("a plaintiff may be awarded actual damages to compensate for out-of-pocket expenses incurred and any humiliation, embarrassment, anguish, or emotional distress" for a violation of the Fair Debt Collection Practices Act).

{¶ 22} Therefore, because actual damages and compensatory damages are equivalent, *Mouse,* 120 Ohio St. at 610, 167 N.E. 868, and because compensatory damages can consist of both economic and noneconomic damages, we hold that the actual damages proven, whether economic or noneconomic, are subject to trebling under R.C. 1345.09(B).

{¶ 23} R.C. 1345.09(A)'s use of the unmodified term "damages" seems to allow for an award of punitive damages for a CSPA violation committed with actual malice. Any award for punitive damages, however, would not be subject to trebling under R.C. 1345.09(B), because punitive damages are not "actual damages." [9] Nevertheless, "actual damages" may be trebled as a penalty against a supplier if the supplier commits an act already prohibited by rule or by a prior court opinion maintained by the Attorney General's office. Thus, the entirety of

---

9. In this case, the jury was not instructed on punitive damages, and there are no special interrogatories testing the general verdict on the CSPA violation.

Whitaker's CSPA damage award may be trebled if the evidence supports the verdict of $105,000.

## Personal Injury Exception—R.C. 1345.12(C)

{¶ 24} In support of its conclusion that noneconomic damages are not available under the CSPA, the court of appeals cited *Marrone v. Philip Morris USA, Inc.*, 9th Dist. No. 03CA0120–M, 2004-Ohio-4874, 2004 WL 2050485, at ¶ 25.[10] In *Marrone*, the plaintiffs filed a class-action lawsuit alleging CSPA violations and fraud. The trial court certified a class only on the plaintiffs' CSPA claims. Among other arguments, the defendant-appellant maintained on appeal that class certification was improper because the plaintiffs-appellees did not fairly and adequately represent the interests of the class because some class members could also have personal injury claims, which would be precluded from the case. The court of appeals affirmed the class certification, determining that the certification did not result in claim preclusion, since all class members were limited to pursuing only economic damages because personal injury claims cannot be litigated in a CSPA action. Id. at ¶ 25.

{¶ 25} R.C. 1345.12 lists exceptions to the application of certain parts of the CSPA.[11] R.C. 1345.12 states:

{¶ 26} "Sections 1345.01 to 1345.13 of the Revised Code do not apply to:

{¶ 27} " * * *

{¶ 28} "(C) Claims for personal injury or death."

{¶ 29} Montrose argues that Whitaker's claims of noneconomic loss were for personal injury. The question now is whether this statute prohibits only claims that arise from personal injuries or whether it prohibits noneconomic damages that are also recoverable in personal injury claims. Put another way, does R.C. 1345.12(C) bar recovery of certain damages simply because they are the type usually sought in personal injury cases? We answer no, for the General Assembly chose the word "claims" instead of "damages" in this section.

---

10. *Marrone* was recently reversed by this court on different grounds. See *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31.

11. There has been little analysis of R.C. 1345.12(C). See *Pomianowski v. Merle Norman Cosmetics, Inc.* (S.D.Ohio 1980), 507 F.Supp. 435 (court relied on R.C. 1345.12(C) to strike the prayer for trebling of personal injury damages in a complaint that alleged that the plaintiff was injured due to the supplier's misrepresentations regarding the quality of mascara); *Glassner v. R.J. Reynolds Tobacco Co.* (June 29, 1999), N.D.Ohio E.D. No. 5:99CV0796, 1999 WL 33591006 (CSPA count alleging misrepresentation, omissions, and concealments about tobacco product dismissed pursuant to R.C. 1345.12(C) because the damages sought were too closely related to personal injury damages).

{¶ 30} Because the CSPA is a remedial law and must be construed in favor of the consumer, R.C. 1345.12(C) will bar only claims that require proof of a personal injury in order to establish a CSPA violation. In this case, however, Whitaker's complaint alleges that his emotional distress was a consequence of Montrose's CSPA violations. He does not allege that his emotional distress establishes the CSPA violation. Therefore, R.C. 1345.12(C)'s exclusion does not apply.

{¶ 31} Montrose argues that if Whitaker is allowed to recover damages for emotional distress, he should be required to show the same degree of evidence that is necessary to prove "serious emotional distress" as is required to prove the torts of negligent or intentional infliction of emotional distress. We disagree. Previously, before either of those torts was recognized, a plaintiff could recover under certain circumstances for emotional distress without having suffered a contemporaneous physical injury. See *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 71 O.O.2d 174, 327 N.E.2d 654 (damages for mental suffering, anguish, and humiliation available if the wrongdoer acted with malice in wrongful execution of judgment); *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340 (damages for mental anguish recoverable in an action for invasion of privacy); *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 33 O.O. 356, 68 N.E.2d 798 (compensatory damages for mental suffering and anguish available for the wilful and intentional invasion of the right of burial). To the extent that the evidence shows intentional or malicious actions on the part of Montrose, Whitaker may recover damages for mental anguish or emotional distress as part of his CSPA remedy.

## Conclusion

{¶ 32} We hold that in an action brought under the CSPA, all forms of compensatory relief, including noneconomic damages, are included within the term "damages" in R.C. 1345.09(A). The actual damages proven, whether economic or noneconomic, are subject to trebling under R.C. 1345.09(B).

{¶ 33} The judgment of the Court of Appeals for Summit County is, therefore, reversed. Because the court of appeals did not address whether the sufficiency and weight of the evidence support an award of noneconomic damages, we remand the case to the Ninth District Court of Appeals for further proceedings.

Judgment reversed
and cause remanded.

MOYER, C.J., RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

O'DONNELL, J., dissents.

O'CONNOR, J., not participating.

Young & McDowall, Laura K. McDowall, and Rocco P. Yeargin, for appellant.

Brouse McDowell, Clair E. Dickinson, and Joseph T. Dattilo, for appellee.

Willis & Willis Co., L.P.A., Mark C. Willis, and Todd L. Willis, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Burdge Law Office Co., L.P.A., and Ronald L. Burdge; and Thomas Domonoske, urging reversal for amicus curiae National Association of Consumer Advocates.

Cooper & Elliott, L.L.C., David A. Brown, and Andrew J. Sonderman, urging affirmance for amicus curiae Ohio Automobile Dealers Association and Ohio Council of Retail Merchants.