[Cite as *Felix v. Ganey Chevrolet, Inc.*, 2013-Ohio-3523.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98985**

# JEFFREY FELIX, ET AL.

PLAINTIFFS-APPELLEES

vs.

# GANLEY CHEVROLET, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-442143 and CV-454238

**BEFORE:** Kilbane, J., Jones, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEYS FOR APPELLANTS**

David D. Yeagley
Elizabeth M. Hill
Ulmer & Berne L.L.P.
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113

A. Steven Dever
A. Steven Dever Co., L.P.A.
13363 Madison Avenue
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEES**

Lewis A. Zipkin
Zipkin Whiting Co., L.P.A.
3637 South Green Road
Beachwood, Ohio 44122

Mark Schlachet
3515 Severn Road
Cleveland Heights, Ohio 44118

MARY EILEEN KILBANE, J.:

{¶1} Defendants-appellants, Ganley Chevrolet, Inc. ("Ganley Chevrolet") and Ganley Management Company ("Ganley Management") (collectively referred to as "Ganley"), appeal from the trial court's order certifying a class action brought by plaintiffs-appellees, Jeffrey and Stacy Felix (collectively referred to as "the Felixes"), under the Ohio Consumer Sales Practices Act ("CSPA"). For the reasons set forth below, we affirm.

{¶2} The facts giving rise to the instant appeal were set forth by this court in Ganley's previous appeal, *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, *discretionary appeal not allowed*, 112 Ohio St.3d 1470, 2007-Ohio-388, 861 N.E.2d 144.

> [The Felixes] brought two actions against Ganley.[1] In both actions, the appellees filed class action complaints alleging consumer sales practices violations and seeking declaratory and injunctive relief.
>
> The Felixes allege in the first action that on March 24, 2001, they went to Ganley to purchase a 2000 Chevy Blazer. The Felixes claim that as an incentive to sign the contract to purchase the vehicle, Ganley informed them that they were approved for 0.0% financing but that the offer would expire that evening. The purchase contract contained an arbitration clause that required "any dispute between you and dealer (seller) will be resolved by binding arbitration."[2]

---

[1]The first action, Cuyahoga C.P. No. CV-442143 and 8th Dist. Cuyahoga No. 86991, was brought against Ganley Chevrolet, Inc., as representative of various Ganley dealerships, and against Ganley Management Co. The second action, Cuyahoga C.P. No. CV-454238 and 8th Dist. Cuyahoga No. 86990, was brought against Ganley Chevrolet, Inc., and all Ganley companies.

[2]The arbitration provision at issue, which appeared in the sales agreement states:
ARBITRATION — ANY DISPUTE BETWEEN YOU AND DEALER (SELLER) WILL BE RESOLVED BY BINDING ARBITRATION. YOU GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT YOUR RIGHTS IN THIS SALES

Jeffrey Felix signed under the arbitration clause and at the foot of the purchase contract, relying on Ganley's representation of 0.0% financing. The purchase contract provided that it was "not binding unless accepted by seller and credit is approved, if applicable, by financial institution." Jeffrey Felix also signed a conditional delivery agreement that specified that "the agreement for the sale/lease of the vehicle described above is not complete pending financing approval * * * and that the consummation of the transaction is specifically contingent on my credit worthiness and ability to be financed."

The Felixes traded in their van as part of the purchase. They allege Ganley insisted the Felixes take the Chevy Blazer home for the weekend. The Felixes claim that when they returned the following Monday to sign the promissory note and security agreement, they were told that GMAC (the financing institution) would only approve their financing at 1.9%, not at the 0.0% that was originally represented. The Felixes agreed to the 1.9% rate and signed the promissory note. More than a month later, the Felixes were informed that GMAC decided not to approve the 1.9% financing. Ganley then informed the Felixes that they could obtain 9.44% financing with Huntington Bank. The Felixes refused to execute a new agreement at the higher interest rate. The Felixes retained the vehicle and have been placing money into escrow for the purchase of the vehicle.

In the first action, under the fourth amended complaint, [the Felixes claim] that the arbitration clause utilized by Ganley was unconscionable and that various practices of Ganley pertaining to the clause violated the Ohio Consumer Sales Practices Act ("the Ohio CSPA"). The first three causes of action were raised as to the representative class. Count one alleges unconscionability of the arbitration clause; counts two and three allege unfair and deceptive consumer sales practices.

---

TRANSACTION (EXCEPT FOR ANY CLAIM IN SMALL CLAIMS COURT). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. ARBITRATOR DECISIONS ARE AS ENFORCEABLE AS ANY COURT ORDER AND ARE SUBJECT TO A VERY LIMITED REVIEW BY A COURT. SEE GENERAL MANAGER FOR INFORMATION REGARDING ARBITRATION PROCESS.

Counts four through six were the Felixes' individual claims. Counts four and five allege unfair and deceptive consumer sales practices concerning Ganley's "bait and switch tactics." Under count four, the Felixes claim that Ganley misrepresented to the Felixes that they were approved for financing, when no such approval was given, in order to get the Felixes to agree to purchase the vehicle later at higher interest rates. They further claim Ganley submitted a credit application to Huntington without authorization from the Felixes and in complete disregard of their privacy. Under count five, the Felixes allege that Ganley deceived Jeffrey Felix with respect to the conditional delivery agreement, and failed to incorporate into the security agreement that the Felixes were not, in fact, approved for financing with GMAC. Count six is a claim for intentional infliction of emotional distress with respect to the alleged misrepresentations Ganley made to the Felixes regarding the financing of the vehicle.

In the second action, the second amended complaint focuses entirely on the arbitration clause itself. Count one is a claim that the clause is unconscionable. Counts two through four claim unfair and deceptive consumer sales practices by Ganley with respect to the arbitration clause. Count five claims Ganley made false statements, representations, and disclosures of fact and defrauded customers as to the arbitration clause. In the second action, there are no direct allegations pertaining to the interest-rate representations made to the Felixes as were alleged in the first action.

In both cases, Ganley filed a motion for stay of proceedings, requesting that the matters be stayed pending arbitration in accordance with the arbitration agreement contained within the parties' purchase contract.

Following a consolidated hearing on the motions, the trial court denied the motions without opinion.

*Id.* at ¶ 2-10.

**{¶3}** Ganley appealed the trial court's denial of its motion to stay pending arbitration, arguing the trial court had erred in determining that the arbitration provision was unenforceable. The issue before us at that time was "whether the dispute between the parties is governed by a valid, enforceable agreement to arbitrate." *Id.* at ¶ 13. We

affirmed the trial court's ruling, concluding that the arbitration provision included in the purchase agreement was substantively and procedurally unconscionable and was, therefore, unenforceable against appellees. *Id.* at ¶ 28.

{¶4} Following our decision, the Felixes filed a "Supplemental Motion for an Order of Class Certification and for Judgment on the Merits" at the trial court, requesting that the trial court certify a class under both Civ.R. 23(B)(2) and (B)(3) in October 2007. They argued that our ruling that the arbitration provision was unconscionable established "CSPA violations which apply to each and every class member." As to its class claim in the first action, the Felixes sought judgment in favor of the purported class on the CSPA claim and requested that each class member be awarded $200 in damages. They also requested that the court issue injunctive relief, enjoining the continued use of the arbitration provision and any substantially similar provisions. With respect to the second action, appellees sought a "final judgment on the merits for the entire case" in the form of a declaratory judgment stating that Ganley's inclusion of the unconscionable arbitration clause in its automobile sales agreements violated the CSPA.

{¶5} Ganley filed a brief in opposition, arguing the Felixes could not maintain a class action under R.C. 1345.09(B) and establish certain prerequisites to class certification under Civ.R. 23, and that due to the public policy favoring arbitration, inclusion of an arbitration provision in a sales agreement could not violate the CSPA. After several years of extensive litigation, the trial court issued judgment entries in both cases in September 2012. In its "Proposed Order of Class Certification and for Partial

Judgment on the Merits," the trial court certified the following plaintiff class under Civ.R. 23(B)(2) and (B)(3):

> All consumers of Vehicles from any of the 25 Ganley Companies (see Plaintiff's Chart, Exhibit A, filed August 18, 2003) within the two-year period preceding commencement through the present date (the Class Period), who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto.

{¶6} In addition to certifying the class, the trial court held that Ganley's inclusion of the subject arbitration provision in its purchase agreements with consumers violated the CSPA and established a basis for classwide relief under Civ.R. 23(B)(2) and (B)(3). In its rigorous opinion granting class certification, the trial court wrote:

> The Court finds that the Ganley defendants have acted on grounds applicable to the class as a whole, thereby making appropriate final injunctive relief and corresponding declaratory relief.   * * * [I]t is the use and enforcement of the arbitration clause which is at issue in this matter. The use of the said clause constitutes a threatened harm to class members as evidenced in the instant case by the litigation of the Defendant[s'] Motion to Stay and Motion to Compel Arbitration.   The class is cohesive in that each class member executed the same or substantially same Purchase Agreement which failed to satisfy the requirements of the [CSPA], by failing to provide certain material information at the time it was due; and the Court will issue relief to protect those class members from prejudice thereby.
>
> * * *
>
> Specifically, it was Defendants' common course of conduct under the direction of defendant Ganley Management Co. and its General Counsel * * * which brought forth and regulated the use of the arbitration clause.   The use of the arbitration clause, i.e., the Defendants' conduct, is itself the basis for relief.   Re-litigating a class member's right to relief over and over again would be a drain on the judiciary and serve no valid purpose.   Few if any class members would likely be able to effectively challenge the Defendants due to the cost of litigation.   If they could challenge Defendants, those costs would be improvident, since the illegality of the

clause has been decided and affirmed by the Court of Appeals, and the cost of further litigation would be wasteful of judicial and party resources.

{¶7} The trial court also ruled that, based on Ganley's conduct, a classwide award of damages was warranted under the CSPA:

> The Court finds that CSPA permits, if it does not require, the Court to award monetary damages to consumers victimized by Defendants' violation of law. To allow Defendants to emerge from this seven-year legal battle, during which time they continued to use the offending clause, without sanction, would defeat the policies underlying CSPA and the rule of law. It would reward lawlessness aimed primarily at consumers.

Concluding that the case "presents a significant violation of law," the court "exercise[d] its discretion" and awarded $200 in damages per transaction to each class member.

{¶8} It is from this order that Ganley now appeals, raising the following single assignment of error for review.

## Assignment of Error

> [T]he trial court erred as a matter of law and abused its discretion in certifying, for purposes of a claim under the [CSPA], a class of customers who signed purchase agreements that included an arbitration provision.

## Standard of Review

{¶9} A trial court has broad discretion in determining whether to certify a class action, and an appellate court should not disturb that determination absent an abuse of discretion. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144

(1980). In *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442 (1998), the Ohio Supreme Court noted that "the appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded * * * in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.* at 70, citing *Marks*; *In re NLO, Inc.*, 5 F.3d 154 (6th Cir.1993). "A finding of abuse of discretion * * * should be made cautiously." *Marks* at 201.

{¶10} The *Hamilton* court further noted that the trial court's discretion in deciding whether to certify a class must be exercised within the framework of Civ.R. 23. *Id.* The trial court is required to "carefully apply the class action requirements" and to conduct a "rigorous analysis" into whether the prerequisites for class certification under Civ.R. 23 have been satisfied. *Id.*

Requirements for Class Action Certification

{¶11} In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Accordingly, before a class may be properly certified as a class action, the following seven prerequisites must be met: (1) an identifiable class must exist, and the definition of the class must be unambiguous; (2) the named plaintiff representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is

impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three requirements under Civ.R. 23(B) must be met. *Hamilton* at 71, citing Civ.R. 23(A) and (B); *Warner v. Waste Mgt. Inc.,* 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988).

Application of Class Action Requirements

{¶12} Ganley argues that the trial court erred in certifying the class because the class definition and time period are overbroad and ambiguous. Ganley further argues that the commonality, predominance, and typicality prerequisites to class certification under Civ.R. 23(A) and (B)(3) were not established and that there was no showing that "final injunctive relief or corresponding declaratory relief" was appropriate "with respect to the class as a whole" for class certification under Civ.R. 23(B)(2). We disagree.

{¶13} As an initial matter, we note that a recurring theme in Ganley's argument is the notion that, due to the public policy favoring arbitration of disputes, "there is and can be no [CSPA] violation based upon the inclusion of an arbitration provision in a contract." Ganley, however, misconstrues the Felixes' theory of liability under the CSPA. The Felixes do not contend that Ganley's inclusion of any arbitration clause in a consumer sales contract violates the CSPA. Rather, they contend that Ganley's inclusion of this particular arbitration provision, which this court found to be misleading, confusing, and substantively unconscionable, or a substantially similar provision, in its

automobile sales agreements constitutes an unfair and deceptive practice under the CSPA.

We agree that such allegations constitute an unfair or deceptive practice giving rise to a claim under the CSPA. *See also Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 28 (9th Dist.) (stating that "it is conceivable that a complainant may allege that an arbitration clause itself may violate R.C. Chapter 1345[.]")

{¶14} Ganley further argues that the individualized assessment necessary for a determination of procedural unconscionability must, in and of itself, preclude any form of classwide relief. However, there is a difference between the proof required to establish an unfair and deceptive practice under the CSPA and the proof required to establish the contractual defense of unconscionability. The fact that an arbitration provision is generally "presumed valid" or that the contractual defense of unconscionability requires both substantive unconscionability and an individualized, case-by-case assessment of procedural unconscionability before a contract provision is determined to be unenforceable does not preclude a finding that inclusion of a misleading, confusing, and substantively unconscionable arbitration provision in a consumer sales contract constitutes an unfair and deceptive practice under the CSPA. As it relates to the claims of the putative class, the issue in the instant case is not whether the arbitration provision was substantively and procedurally unconscionable, and thus unenforceable, under contract law principles, but rather, whether the provision violated the CSPA for reasons that apply classwide, irrespective of procedural unconscionability.

**{¶15}** Therefore, Ganley's arguments based on the public policy favoring arbitration and the requirements for establishing procedural unconscionability as a matter of contract law do not preclude class certification in this case.

**{¶16}** We now review the detailed findings made by the trial court.

<u>(1) Identifiable Class</u>

**{¶17}** Civ.R. 23 requires that an identifiable class must exist and the definition of the class must be unambiguous. This requirement "will not be deemed satisfied unless the description of [the class] is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. Thus, the class definition must be precise enough to permit identification within a reasonable effort." (Internal quotations and citations omitted.) *Hamilton*, 82 Ohio St.3d at 71-72, 694 N.E.2d 442.

**{¶18}** In the instant case, the trial court found that the Felixes' proposed class was identifiable, consisting of:

> All consumers of Vehicles from any of the 25 Ganley Companies (see plaintiff's chart, Exhibit A, filed August 18, 2003) within the two-year period preceding commencement through the present date (the Class Period), who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto.

We are mindful that "[t]he focus at this stage is on how the class is defined. 'The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.'" (Citation omitted.) *Hamilton* at 73.

**{¶19}** A plain reading of the class definition dictates that the class is limited to consumers who purchased vehicles from any of the 25 Ganley companies within the two-year period preceding commencement of the Felixes' original complaint filed on June 18, 2001. Based on this definition, it would be administratively feasible to determine whether a particular person is a member of the class. Therefore, the identifiable class requirement is satisfied.

(2) Class Membership

**{¶20}** The class membership prerequisite requires only that "the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." (Citation omitted.) *Hamilton*, 82 Ohio St.3d at 74, 694 N.E.2d 442.

**{¶21}** Here, the trial court found that Ganley

instituted the arbitration clause on or about 1998 and the Court need only

look at the pre-printed form agreements which Ganley utilized and executed

to identify the class and determine whether a given individual is a class

member. Plaintiff is a member of the class so defined, having purchased a

vehicle from Ganley Chevrolet, Inc., and signed a Purchase Agreement on

or about March 2000, containing the subject arbitration clause.

The Felixes and the class members possess the same interest and suffer the same injury — individuals who purchased a vehicle from Ganley Chevrolet, Inc., and signed a purchase

agreement containing the subject arbitration clause. Thus, the class membership requirement is satisfied.

(3) Numerosity

{¶22} Civ.R. 23(A) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable[.]" Here, the trial court found that "the class as * * * defined contains thousands of members and is thus so numerous that joinder of all members is impracticable." In *Hamilton*, the Ohio Supreme Court found that a class with at least 2,700 possible class members satisfies the numerosity requirement. *Id.* at 75. The court stated, "[t]his number alone is sufficient to establish that the class is so numerous that joinder of all members is impracticable." (Citations omitted.) *Id.* Similarly, the instant class consists of "thousands of members." Thus, the numerosity requirement is satisfied.

(4) Commonality

{¶23} Civ.R. 23(A)(2) requires the presence of "questions of law or fact common to the class." "Courts generally give this requirement a permissive application. It is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied." (Citations omitted.) *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442. In the instant case, the trial court found that:

> this matter concerns a common nucleus of operative facts such that there are questions of fact and law common to all members of the class. These

questions include 1) whether a given individual purchased a vehicle from a Ganley dealership during the Class Period, 2) whether she signed a Purchase Agreement identical or substantially identical to that at issue, 3) whether the arbitration clause is violative of the [CSPA], 4) and is so, whether the Court should award a classwide damage remedy predicated upon such violation(s) of law.

**{¶24}** Ganley's alleged violation of the CSPA, based on inclusion of the incomplete and misleading arbitration provision in its consumer sales agreements creates such a common, class-wide contention. Accordingly, the commonality prerequisite is satisfied.

(5) Typicality

**{¶25}** "The requirement for typicality is met where there is no express conflict between the class representatives and the class." *Hamilton* at 77. Here, the trial court found that:

the claims of the representative parties are typical of the claims of the class. There is no express conflict between the representatives and the absent class members. The same unlawful conduct, i.e., the use of the arbitration clause, was directed at the representatives and the class members; and that conduct is the crux of class member claims.

**{¶26}** This same conduct gives rise to the claims of the other putative class members, and the claims are governed by the same legal theory — that Ganley's inclusion of such a provision in their sales agreements violated the CSPA. Thus, the typicality prerequisite is satisfied.

(6) Adequate Representation

**{¶27}** A class representative is "deemed adequate so long as his or her interest is not antagonistic to that of other class members." (Citations omitted.) *Id.* at 78. In the

instant case, the trial court found that "the representative parties will fairly and adequately represent the interests of the class. Plaintiff representatives have no interest which antagonistic to the interest of the class as a whole. Indeed, they are seeking to obtain relief for the class members prior to turning attention to their individual claims." Accordingly, the Felixes are adequate class representatives.

(7) Civ.R. 23(B) Requirements

**{¶28}** Having determined that the requirements of Civ.R. 23(A) have been met, we now look to Civ.R. 23(B). Here, the trial court found that the class action could be maintained under both Civ.R. 23(B)(2) and (3), which provide that a class action may be maintained if the prerequisites of Civ.R. 23(A) are satisfied, and

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

**{¶29}** Ganley argues that the trial court's class certification under Civ.R. 23(B)(2) was improper because there is no relief that would be appropriate for the class as a whole since relief could only be awarded on the basis of individualized proof of procedural

unconscionablility, and Civ.R. 23(B)(2) is inapplicable when the primary relief requested is damages.

{¶30} In the instant case, the trial court determined that Ganley "acted on grounds applicable to the class as a whole, thereby making appropriate final injunctive relief and corresponding declaratory relief." The court reasoned that the use and enforcement of the arbitration clause "constitutes a threatened harm to class members as evidenced * * * by the litigation of the Defendants' Motion to Stay and Motion to Compel Arbitration." The court further stated that

> [t]he class is cohesive in that each class member executed the same or substantially same Purchase Agreement which failed to satisfy the requirements of the [CSPA], by failing to provide certain material information at the time it was due; and the Court will issue relief to protect those class members from prejudice thereby.

{¶31} Under Civ.R. 23(B)(2), the plaintiff must show that the defendant's actions impact the entire class and that final injunctive or declaratory relief is appropriate. "Certification under Civ.R. 23(B)(2) depends upon what type of relief is primarily sought, so where the injunctive relief is merely incidental to the primary claim for money damages, Civ.R. 23(B)(2) certification is inappropriate." *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶17, citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.2001).

{¶32} As discussed above, the use of the arbitration clause is at issue, not procedural unconscionability as Ganley contends. The use of the arbitration clause constitutes a threat to the class as a whole. The Ohio Supreme Court has stated:

"Disputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If [Civ.R. 23(A)] prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under [Civ.R. 23(B)(2)]."

*Hamilton*, 82 Ohio St.3d at 87, 694 N.E.2d 442, quoting Wright, Miller & Kane, *Federal Practice and Procedure,* Section 1775, at 470 (2d Ed.1986) . Accordingly, the class is maintainable under Civ.R. 23(B)(2).

{¶33} With respect to Civ.R. 23(B)(3), Ganley argues the trial court erred in certifying an "all customers" class because it "extends beyond the scope of the statute" and includes individuals who have no claim and who have sustained no actual damages as a result of Ganley's inclusion of the arbitration provision in its sales agreements.

{¶34} Civ.R. 23(B)(3) provides that in order to certify a class in an action for damages, the trial court must make two findings. First, it must find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and second, the court must find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In its analysis under Civ.R. 23(B)(3), the trial court found that:

> questions of law and fact common to the class predominate over any questions affecting efficient adjudication of this controversy.
>
> Specifically, it was Defendants' common course of conduct under the direction of defendant Ganley Management Co. and its General Counsel * * * which brought forth and regulated the use of the arbitration clause. The use of the arbitration clause, i.e., the Defendants' conduct, is itself the basis for relief. Re-litigating a class member's right to relief over and over again would be a drain on the judiciary and serve no valid purpose. Few if any class members would likely be able to effectively challenge the Defendants due to the cost of litigation. If they could challenge Defendants, those costs would be improvident, since the illegality of the clause has been decided and affirmed by the Court of Appeals, and the cost of further litigation would be wasteful of judicial and party resources.

**{¶35}** The Ohio Supreme Court has stated that:

> the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication. And, in determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein.

*Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313, 473 N.E.2d 822 (1984), citing Wright & Miller, *Federal Practice and Procedure*, Section 1779, at 59 (1972) .

**{¶36}** Here, as the trial court found, the common questions of law and fact arise from Ganley's common course of conduct, which brought forth and regulated the use of the arbitration clause. Furthermore, the claims of the putative class members arise from the arbitration clause. The trial court noted that the costs of individual litigation would be improvident, since the illegality of the clause has been affirmed by this court, and the cost of further litigation would be wasteful of judicial and party resources. The Ohio Supreme Court has found that

> the trial court is in the best position to consider the feasibility of gathering and analyzing class-wide evidence. Since the trial court's ruling did not exceed the bounds of reasonableness, we find that it acted within its discretion in resolving that there are common questions of fact among class members that can be presented in an efficient fashion.

*In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 12. Likewise, we find that the trial court in the instant case properly concluded that the Felixes satisfied Civ.R. 23(B)(3).

Class Actions and the CSPA

{¶37} Although the Felixes have satisfied the Civ.R. 23 requirements for certifying a class action, we must now turn to the requirements of R.C. 1345.09(B), because classwide relief is sought for an alleged violation of the CSPA.

{¶38} "R.C. 1345.09(B) provides that a consumer may qualify for class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable. The prior notice may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3)." *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 9. Cases that "involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Id.* at ¶ 21. Likewise, general administrative rules are "not sufficient to put a reasonable person on notice" that a specific act or practice is prohibited. *Id.* at ¶ 23. Rather,

> [p]rior notice may * * * be in the form of "an act or practice declared to be deceptive or unconscionable by rule adopted under [R.C. 1345.05(B)(2)]." R.C. 1345.09(B). R.C. 1345.05(B)(2) authorizes the Attorney General to "[a]dopt, amend, and repeal substantive rules defining with reasonable specificity acts or practices that violate sections [R.C. 1345.02 and 1345.03]."

*Id.* at ¶ 22.

{¶39} Ganley argues that the trial court abused its discretion in certifying the class because the prior notice requirement in R.C. 1345.09(B) for maintaining a CSPA class

action was not met. Ganley contends that the class "extends beyond the scope" of the CSPA. We disagree.

{¶40} In the instant case, the trial court held that the prior notice requirement set forth in R.C. 1345.09(B) and *Marrone* was met by Ohio Adm.Code 109:4-3-16(22) and two prior court decisions contained in the Attorney General's public inspection file involving unfair and deceptive practices in connection with motor vehicle sales. The trial court concluded that Ohio Adm.Code 109:4-3-16(22) and the acts and practices contained within the prior decisions gave the required notice to Ganley under R.C. 1345.09 — that all material terms must be included in a written contract for the sale of an automobile in Ohio.

{¶41} Ohio Adm.Code 109:4-3-16(22) provides that

> It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement or sale of a motor vehicle, to: * * * [f]ail to integrate into any written sales contract, all material statements, representations or promises, oral or written, made prior to obtaining the consumer's signature on the written contract with the dealer[.][3] (Emphasis added.)

---

[3]It is not entirely clear, following the Ohio Supreme Court's decision in *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, whether Ohio Adm.Code 109:4-3-16(B)(22) remains a viable basis upon which to base a CSPA violation at least "absent proof of fraud, mistake, or other invalidating cause." *Id.* at ¶ 20. In *Williams*, the Ohio Supreme Court held that "[t]o the extent that [Ohio Adm.Code] 109:4-3-16(B)(22) conflicts with the parol evidence rule as codified by R.C. 1302.05 and allows parol evidence contradicting the final written contract, Ohio Adm.Code 109:4-3-16(B)(22) constitutes an unconstitutional usurpation of the General Assembly's legislative function and is therefore invalid." *Id.* at paragraph one of the syllabus. The court further held that Ohio Adm.Code 109:4-3-16(B)(22) was "not enforceable" due to its conflict with R.C. 1302.05. *Id.* at ¶ 22. In addressing the impact of *Williams,* the trial court stated that "in the instant case[,] the [parol] evidence rule was not an issue regarding [Ganley's] failure to integrate all material statements upon their use of the arbitration. This Court and the Eighth Judicial District Court of Appeals have decided that [Ganley] violated that regulation when [it]

{¶42} The trial court held that Ganley "fail[ed] to integrate all material statements upon [its] use of the arbitration clause" and "violated [Ohio Adm.Code 109:4-3-16(B)(22)] when [it] failed to advise consumers as to the rules of the American Arbitration Association and the fees associated therewith." We agree. The arbitration clause at issue was found to be incomplete and misleading because did not include important and material information. By failing to integrate "all material statements" in the purchase agreement, the arbitration clause violates Ohio Adm.Code 109:4-3-16(B)(22).

{¶43} The trial court also found that two decisions in the public inspection file, *Smith v. Discount Auto Sales*, Lorain C.P. No. 97 CV 120022 (Mar. 19, 1998), PIF No. 10001735, and *Renner v. Derin Acquisition Corp.*, 111 Ohio App.3d 326, 676 N.E.2d 151 (8th Dist.1996), PIF No. 10001587, gave the required notice under R.C. 1345.09. Both decisions involve the same industry — automobile sales — automobile sales agreements, and the dealer's omission of allegedly material information from an automobile sales agreement. Both *Smith* and *Renner* involved the failure to integrate material terms of the parties' agreement, to which the parties had allegedly previously agreed, in the sales contract. The conduct and practices at issue in those cases were similar to the conduct at issue here, i.e., Ganley's inclusion of an incomplete and misleading arbitration provision in its sales agreement. Therefore, these decisions provided "meaningful notice" to

---

failed to advise consumers as to the rules of the American Arbitration Association and the fees associated therewith."

Ganley that its conduct was unfair and deceptive under *Marrone* and R.C. 1345.09(B). Accordingly, the Felixes satisfied the prior notice requirement and the trial court did not abuse its discretion in certifying the class under the CSPA.

Notice Requirements for a Civ.R. 23(B)(3) Class
& Damages Award under the CSPA

**{¶44}** Lastly, Ganley argues the trial court's class certification order was procedurally deficient because the trial court proceeded to grant judgment in favor of the class without complying with any of the prejudgment notice requirements set forth in Civ.R. 23(C)(2). Ganley further argues that the CSPA limits damages in class actions to actual damages, and the trial court erred by awarding each class member $200 in damages for individual violations of the CSPA. The propriety of the trial court's award, however, is outside of the scope of our review on appeal because Ganley has only assigned as error the trial court's certification of the class, not the court's entry of partial judgment on the merits, and the partial judgment on the merits is not a final appealable order.

**{¶45}** Appellate courts have jurisdiction to review the final orders or judgments of lower courts within their appellate districts. Ohio Constitution, Article IV, Section 3(B)(2). An order must be final before it can be reviewed by an appellate court. "If an order is not final, then an appellate court has no jurisdiction." *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989).

**{¶46}** "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *State ex rel. Scruggs v.*

*Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus.

{¶47} R.C. 2505.02(B)(4) provides that an order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when that order

> grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶48} Civ.R. 54(B) requires that a court make an express determination that there is no just reason for delay in order to make appealable an order adjudicating fewer than all the claims or the rights of fewer than all the parties, and must be followed when a case involves multiple claims or multiple parties. *State ex rel. A & D Ltd. Partnership v. Keefe*, 77 Ohio St.3d 50, 56, 671 N.E.2d 13 (1996).

{¶49} The trial court's order giving rise to the instant appeal was both a ruling on class certification and an entry of partial judgment on the merits. Because the partial judgment does not dispose of all claims of all parties to this litigation, we agree with the Felixes' contention that the judgment is not a final appealable order under R.C. 2505.02 and is not subject to review at this time.

<u>Conclusion</u>

**{¶50}** We are mindful that "due deference must be given to the trial court's decision. A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. * * * A finding of abuse of discretion * * * should be made cautiously." *Marks*, 31 Ohio St.3d at 201, 509 N.E.2d 1249. Here, the trial court conducted a rigorous analysis into whether the prerequisites for class certification under Civ.R. 23 have been satisfied. *See Stammco, L.L.C. v. United Tel. Co. of Ohio*, Slip Opinion No. 2013-Ohio-3019, syllabus (where the Ohio Supreme Court held that

> [a]t the certification stage in a class-action lawsuit, a trial court must undertake a rigorous analysis, which may include probing the underlying merits of the plaintiff's claim, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Civ.R. 23.

The court presided over the instant case for over eleven years, heard witness testimony and extensive oral argument, and concluded that the Felixes established the requirements to maintain a class action under Civ.R. 23, and the prior notice required to maintain a CSPA class action under R.C. 1345.09(B). The trial court deemed class certification appropriate.

**{¶51}** Based on the foregoing, we find that the trial court did not abuse its discretion in certifying the class in this case.

**{¶52}** Accordingly, the sole assignment of error is overruled.

**{¶53}** Judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS (WITH SEPARATE DISSENTING OPINION ATTACHED)

KENNETH A. ROCCO, J., DISSENTING:

{¶54} I respectfully dissent from the majority's disposition of this appeal. Although I agree that Ganley's inclusion of the subject arbitration provision in its consumer automobile sales agreements could constitute an unfair or deceptive practice giving rise to an individual claim on behalf of the Felixes under the CSPA, in my view, the Felixes failed to establish certain threshold requirements under Civ.R. 23(A) and R.C. 1345.09(B) necessary to maintain a CSPA class action based on these allegations.

Ambiguous Class Definition

**{¶55}** In this case, the trial court certified a Civ.R. 23(B)(2) and (B)(3) class consisting of

> [a]ll consumers of Vehicles from any of the 25 Ganley Companies (see Plaintiff's Chart, Exhibit A, filed August 18, 2003) within the two-year period preceding commencement through the present date (the Class Period), who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto.

The majority's opinion summarily concludes, based on what it represents to be "[a] plain reading" of the class definition, that "it would be administratively feasible to determine whether a particular person is a member of the class," and that, "[t]herefore, the identifiable class requirement is satisfied."

**{¶56}** I disagree. To satisfy Civ.R. 23(A)'s requirement of an identifiable class, the class definition must unambiguously specify the criteria by which to determine whether a particular individual is a member of the class. It is not the role of this court to "formulate the class" for the parties. *Stammco, L.L.C. v. United Tel. Co.*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 12, quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987). Although, in many cases, class membership may be readily determined where the term "commencement" is used to identify the class period, where, as here, the trial court certified the class in two different cases "commenced" at two different times, the class action allegations were not added until long after the first action was filed, and one of the defendants, Ganley Management, was not added as a defendant until nearly two years after the commencement of the first action, the meaning of the phrase "within the two-year period preceding commencement"

is unclear.[4] Does the class consist of (1) individuals who signed a purchase agreement within two years of the Felixes' filing of their original complaint in the first action, (2) individuals who signed a purchase agreement within two years of the Felixes' filing of their original complaint in the second action, (3) individuals who signed a purchase agreement within two years of the amendments adding the class allegations, or (4) as it relates to the claims against Ganley Management, individuals who signed a purchase agreement within two years after Ganley Management was added as a defendant?[5] Because I believe the phrase "within the two-year period preceding commencement" is ambiguous as applied in this case, I do not believe the class definition provides the requisite "means * * * specified at the time of certification to determine whether a particular individual is a member of the class." *Hamilton*, 82 Ohio St.3d at 74, 694

---

[4]As the majority's opinion suggests, this appeal involves two cases with a complex procedural history. The Felixes filed their first action against Ganley Chevrolet, CV-442143, on June 18, 2001, asserting various individual claims relating to the interest rate and financing arrangements applicable to a vehicle the Felixes had purchased from Ganley Chevrolet in March 2001. On November 26, 2001, after Ganley sought to enforce the arbitration provision at issue, the Felixes filed their second action, CV-454238, a declaratory judgment action against Ganley Chevrolet, in which they alleged that Ganley's inclusion of the arbitration provision in their purchase agreement violated the CSPA. Neither of the actions originally included class allegations. Amendments were made to the complaints in both cases, ultimately resulting in the Felixes filing a fourth amended complaint in the first action and a second amended complaint in the second action, both of which included class action allegations seeking declaratory and injunctive relief and/or monetary damages under the CSPA. The amendments to the complaints also affected the named defendants. Ganley Management was added as a defendant to the first action in 2003.

[5]The distinction between Ganley Chevrolet and Ganley Management in this case is not insignificant. For example, with respect to who is liable for the damages awarded, the trial court's order states that Ganley Management "shall be liable in full, while [Ganley Chevrolet] shall be liable only to those class members to whom it sold vehicles."

N.E.2d 442; *see also Stammco* at ¶ 11 (trial court abused its discretion in certifying class where class definition was ambiguous, "prevent[ing] the class members from being identified without expending more than a reasonable effort"). Accordingly, I would find that the Felixes have failed to satisfy Civ.R. 23(A)'s requirement of an identifiable, unambiguous class.

CSPA's "Meaningful Notice" Requirement

{¶57} I also take issue with the majority's determination that Ohio Adm.Code 109:4-3-16(22) and the two prior court decisions from the Attorney General's public inspection file relied upon by the trial court, *Smith v. Discount Auto Sales*, Lorain C.P. No. 97 CV 120022 (Mar. 19, 1998), PIF No. 10001735, and *Renner v. Derin Acquisition Corp.*, 111 Ohio App.3d 326, 676 N.E.2d 151 (8th Dist.1996), PIF No. 10001587, provided "meaningful notice" to Ganley, as required under R.C. 1345.09(B) and *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, that its inclusion of the subject arbitration provision in its automobile sales agreements constituted an unfair or deceptive practice under the CSPA.

{¶58} Ohio Adm.Code 109:4-3-16(22) provides that

It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement or sale of a motor vehicle,
to: * * * [f]ail to integrate into any written sales contract, all material

statements, representations or promises, oral or written, made prior to

obtaining the consumer's signature on the written contract with the dealer[.][6]

{¶59} There has been no claim in this case that arbitration was ever the subject of any "statements, representations[,] or promises * * * made prior to obtaining the customer's signature on the written contract with the dealer," other than, of course, the arbitration provision itself. To the contrary, the Felixes complained that "no part of the arbitration clause was explained" and that Jeffrey Felix "wasn't told anything" regarding arbitration before he signed the sales agreement. In other words, the Felixes' CSPA claim is not premised on allegations that Ganley failed to properly integrate prior "statements, representations[,] or promises" made to induce the Felixes and other class members to purchase vehicles — the conduct regulated by Ohio Adm.Code 109:4-3-16(B)(22) — rather, the Felixes contend that inclusion of the arbitration provision in the sales agreement violated the CSPA because (1) the language of the arbitration provision was ambiguous, confusing, and misleading, (2) the provision failed to provide accurate and complete information about the arbitration process, and (3) as a result, consumers signing the agreement could not have known what being bound to

---

[6]I agree with the majority that "[i]t is not entirely clear, following the Ohio Supreme Court's decision in *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, whether Ohio Adm.Code 109:4-3-16(B)(22) remains a viable basis upon which to base a CSPA violation at least 'absent proof of fraud, mistake, or other invalidating cause.' *Id.* at ¶ 20." Moreover, the trial court's determination (in considering the impact of *Williams*) that the parol evidence rule "was not an issue" in this case, in my view, further explains why Ohio Adm.Code 109:4-3-16(B)(22) does not apply to the facts here, i.e., because there was no alleged prior statement or representation made regarding arbitration that Ganley failed to integrate into its sales agreements.

arbitrate any disputes really meant. As such, I would find that Ohio Adm.Code 109:4-3-16(B)(22) is not applicable here and did not provide meaningful notice to Ganley that its inclusion of the subject arbitration provision in its sales agreements was an unfair or deceptive act under the CSPA. *See Williams*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, at ¶ 19 ("Ohio Adm.Code 109:4-3-16(B)(22) provides that an automobile dealer violates the CSPA if it fails to integrate all oral representations and promises made prior to obtaining the consumer's signature on the written contract into that contract."); *Gonzalez v. Spofford*, 8th Dist. Cuyahoga No. 85231, 2005-Ohio-3415, ¶ 26 (dealer violated Ohio Adm.Code 109:4-3-16(B)(22) by failing to integrate promise to assume debt on old plaintiffs' car, which dealer made to induce plaintiffs to purchase a new vehicle, into the written sales contract); *cf. Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, ¶ 24-30 (4th Dist.) (trial court erred in finding that dealer violated Ohio Adm.Code 109:4-3-16(B)(22) by omitting a description of exterior paint damage from the written contract where the supplier's disclosure of damage to the vehicle, without more, would not induce a reasonable consumer to purchase the vehicle).[7]

---

[7]There may also be an issue as to whether Ohio Adm.Code 109:4-3-16(B)(22) applies to Ganley Management. Ganley Management is not a dealer, but provides management-related services to all the Ganley auto dealerships. Under Ohio Adm.Code 109:4-3-16(B)(22), the prohibited conduct is limited to actions by "dealers, manufacturers, advertising associations, or advertising groups." Under Ohio Adm.Code 109:4-3-16(A)(1), a "dealer" is "any person engaged in the business of selling, offering for sale or negotiating the sale of five or more motor vehicles during a twelve-month period, commencing with the day of the month in which the first such sale is made, or leasing any motor vehicles, including the officers, agents, salespersons, or employees of such a person; or any person licensed as a motor vehicle dealer or salesperson under Chapter 4517. of the

**{¶60}** Nor would I find that the two decisions relied upon by the trial court from the public inspection file, *Smith, supra,* and *Renner, supra,* provided "meaningful notice" to Ganley that its conduct was unfair and deceptive under *Marrone, supra,* and R.C. 1345.09(B). Although, as the majority points out, these decisions involve the same industry — automobile sales — an analysis of the facts of those cases shows that the conduct at issue in those cases was not "substantially similar" to the conduct at issue here.

**{¶61}** *Smith* involved a defendant's failure to honor an express oral warranty that the plaintiff could obtain an unconditional refund if the vehicle at issue did not pass an E-Check or if other mechanical problems arose with the vehicle. Notwithstanding the defendant's statements to the plaintiff regarding the existence of an express warranty, the defendant marked the contract that the vehicle had been sold "as is" and ultimately refused to honor the warranty in full.

**{¶62}** In *Renner*, the plaintiff had purchased a vehicle using a GM employee discount certificate she had obtained from her son, a former GM employee. *Renner*, 111 Ohio App.3d at 328-329, 676 N.E.2d 151. At the time she signed the purchase agreement, no one at the dealership told the plaintiff about the requirements for the GM employee discount certificate program, and the dealership had taken no action to determine the validity of the certificate, which it was required to do. *Id.* at 330. After the plaintiff drove away with the vehicle, the dealer learned that the plaintiff's certificate

Revised Code." An "authorized agent" is defined in Ohio Adm.Code 109:4-3-16(A)(4) as "any person within the dealership with designated authority to contractually bind the dealership."

was invalid and would not be honored by GM. *Id.* The dealer then contacted the plaintiff, informed her that GM would not honor the certificate, and demanded that she pay an additional sum for the purchase of the vehicle. *Id.* When the plaintiff refused to pay the additional sum requested, the dealer refused to deliver the vehicle title to her. *Id.* at 330-331.

{¶63} The dealer argued that the validity of the certificate was a condition precedent to the plaintiff obtaining a discounted price on the vehicle. *Id.* at 333. The purchase agreement, however, made no reference to the GM employee discount and did not state that the vehicle sales price was contingent upon meeting requirements for the GM discount. *Id.* at 330, 333. Having failed to reference the plaintiff's redemption of the employee discount certificate in the written sales contract, the court held that the dealer was estopped to assert an oral condition precedent as an excuse for withholding the certificate of title it was otherwise required to deliver. *Id.* at 336.

{¶64} While certain aspects of the conduct in *Smith* or *Renner* may bear some similarity to the conduct at issue in this case, in my view, the defendants' actions in *Smith* and *Renner* are not "substantially similar" to Ganley's alleged unfair and deceptive conduct in this case, i.e., the inclusion of an incomplete and misleading arbitration provision in its sales agreements.

{¶65} "Substantial similarity" requires a level of "specificity as to the wrongful conduct." *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 695-696 (S.D.Ohio 2012) (applying substantial similarity requirement to various decisions). It

means "a similarity not in every detail, but in essential circumstances or conditions." *Marrone*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, at ¶ 24. "While this specificity requirement does not mandate identical facts (which would be virtually impossible to show because every situation has distinguishable facts), the level of specificity must go beyond the general prohibitions of the CSPA." *Gascho* at 695-696; *see also In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litigation*, 880 F.Supp.2d 801, 870 (S.D.Ohio 2012) (concluding decision in which the defendant placed a vehicle in the stream of commerce that was afflicted with a "multitude of different problems" that "required [the plaintiff] to have the car in for repairs twenty times over a two-year period" was unlike conduct at issue in which defendant allegedly placed a vehicle into the stream of commerce with one defect that required repair on one occasion); *Kline v. Mtge. Elec. Sec. Sys.*, S.D.Ohio No. 3:08cv408, 2010 U.S. Dist. LEXIS 143391 (Dec. 30, 2010) (attorney's attempts to collect on a stale, defective, and discharged judgment as to an automobile lease was not substantially similar to a mortgage service company's attempts to collect attorney fees that could not properly be imposed in connection with a defaulted residential mortgage).

{¶66} Although *Smith*, *Renner*, and this case all arguably involved, in very general terms, a dealer's omission of information from an automobile sales agreement, the type of information omitted, the way in which the information was omitted, and the surrounding circumstances are very different. Both *Smith* and *Renner* involved (along with other conduct that is not applicable here), the failure to integrate specific, material terms to

which the parties had allegedly previously agreed into the sales contract. As explained above, this case does not.

**{¶67}** Further, although in *Renner*, there is some discussion of the dealer's obligation "to integrate in[to] the final contract 'all material statements, representations, or promises,'" including any agreed terms relating to the redemption of the employee discount certificate, the CSPA violations at issue centered primarily on the dealer's attempt to increase the purchase price and failure to deliver the certificate of title for the vehicle after the plaintiff had refused to pay the increased price demanded by the dealer. In *Smith*, the CSPA violations centered around the defendant's failure to honor the terms of the express warranty that had been given to the plaintiff. Because, in my view, *Smith* and *Renner* do not "share the essential characteristics or conditions" alleged in this case, I do not agree with the majority's conclusion that they provided "meaningful notice" to Ganley that its actions constituted a deceptive act or practice under R.C. 1345.09(B).

CSPA Limitation of Damages

**{¶68}** Further, even if *Smith*, *Renner*, or Ohio Adm.Code 109:4-3-16(B)(22), provided Ganley with the meaningful notice required by R.C. 1345.09(B), I would still find that the trial court abused its discretion in certifying the putative class as a Civ.R. 23(B)(3) damages class under the CSPA because the class is overly broad and includes individuals who sustained no actual damages as a result of the conduct at issue.

**{¶69}** Where classwide relief is sought for a violation of the CSPA, the recoverable damages are limited to actual damages. R.C. 1345.09(B); *Washington v.*

*Spitzer Mgt.*, 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, ¶ 32 ("CSPA limits the damages available in class actions to actual damages"); *Konarzewski v. Ganley, Inc.*, 8th Dist. Cuyahoga No. 92623, 2009-Ohio-5827, ¶ 46 ("class action plaintiffs must prove actual damages under the CSPA"). A showing of actual damages is therefore required before a CSPA class seeking the recovery of damages may be properly certified. *See Searles v. Germain Ford of Columbus, L.L.C.*, 10th Dist. Franklin No. 08AP-728, 2009-Ohio-1323, ¶ 22 ("The fact that statutory damages are not available in a class action indicates proof of actual damages is required before certification of an R.C. 1345.09 class action is proper."). Only those individuals who sustained actual damages as a result of an alleged CSPA violation may properly be included within a Civ.R. 23(B)(3) damages class. *See, e.g., Konarzewski*, 2009-Ohio-5827 at ¶ 47-48 (observing that to comply with R.C. 1345.09(B), Civ.R. 23(B)(3) class would "need to be narrowed" to include only those individuals who sustained actual damages).

{¶70} Although I can certainly envision scenarios in which customers may have sustained actual damages as a result of Ganley's inclusion of the arbitration provision in their sales agreements, e.g., attorney fees incurred in opposing efforts to enforce the arbitration provision (as the Felixes have incurred in this case), damages resulting from a customer's decision to forgo recourse it might otherwise have pursued due to confusion regarding what arbitration of the dispute under the sales agreement entailed, I can also envision scenarios in which customers sustained no actual damages at all, such as where a customer had no dispute with Ganley. There is certainly nothing in the record that

suggests that all Ganley customers sustained actual damages as a result of Ganley's use of the arbitration provision, such that a class of "[a]ll consumers of Vehicles from any of the 25 Ganley Companies * * * who signed a purchase agreement containing the arbitration clause at suit or one substantially similar thereto" could be properly certified as a Civ.R. 23(B)(3) damages class under the CSPA.

{¶71} The majority does not address this issue. Instead, the majority concludes that because the trial court's "partial judgment on the merits" is not a final appealable order and "not subject to review at this time," the court need not consider the CSPA's limitation on damages or whether the trial court erred in "exercis[ing] its discretion" and awarding each class member $200 in damages for violations of the CSPA.

{¶72} However, the CSPA's damages limitation impacts not only the damages that may ultimately be recovered by a properly certified class but whether a putative class may be properly certified as a Civ.R. 23(B)(3) CSPA class in the first instance. *See, e.g., Searles*, 2009-Ohio-1323 at ¶ 22; *Konarzewski*, 2009-Ohio-5827, at ¶ 47-48. Because the Civ.R. 23(B)(3) class certified by the trial court includes individuals who sustained no actual damages, I would find that the trial court abused its discretion in certifying the class under the CSPA.[8]

_____

[8]The trial court's certification of the Civ.R. 23(B)(3) damages class under the CSPA (and its classwide damages award) was based on the theory that the trial court could, in "its discretion," award each class member $200 in damages for violations of the CSPA because class members "were denied material information concerning their recourse * * * against the vehicle merchant, should they have the need for recourse." However, no provision exists for the recovery of such "discretionary" damages in a CSPA class action. In support of its damages theory, the trial court cites *State v. Rose Chevrolet, Inc.*, 12th Dist. Butler No. CA910120214, 1993 Ohio App. LEXIS 3281 (June 28, 1993),

Prejudgment Notice Requirement for Civ.R. 23(B)(3) Class Actions

**{¶73}** In my view, the trial court's class certification order is also procedurally deficient. I believe that the trial court, in purporting to adjudicate the merits and to award damages as part of its class certification order — without providing the prejudgment notice required under Civ.R. 23(C)(2) — is proceeding on an improper procedural course. *See Stammco, L.L.C. v. United Tel. Co. of Ohio,* Slip Opinion No. 2012-0169, 2013-Ohio-3019, ¶ 33 (July 16, 2013) ("'[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"), quoting *Amgen v. Connecticut Retirement Plans & Trust Funds,* ___ U.S. ___, 133 S.Ct. 1184, 1191, 185

---

involving a dealer's practice of selling used rental car vehicles as "factory official" vehicles. The trial court determined that the practice was an unfair and deceptive act under the CSPA and, based on testimony from a manager of a used car dealership regarding the difference in value between a used rental car and a "factory official" car, awarded each class member who had purchased such a vehicle $500 in damages. *Id.* at *2, *4. The appellate court affirmed. *Id.* at *6. *Rose Chevrolet*, unlike this case, involved an award of actual damages to class members based on the "benefit of the bargain" theory, i.e., "the difference between the value of property as it was represented to be and its actual value at the time it was received or purchased." *Id.* at *5. It does not support the trial court's damages theory in this case.

The Felixes contend that the trial court's "discretionary damages" theory is nothing more than a "creative approach" to damages, and that such approaches to damages have been expressly authorized in CSPA cases. In the cases cited by the Felixes in support of this proposition, however, there was either a specific statute governing the amount of damages to be awarded, *Celebrezze v. Hughes,* 18 Ohio St.3d 71, 479 N.E.2d 886 (1985) (odometer fraud), or a clear method by which actual damages were calculated, supported by the evidence in the record. *See Rose Chevrolet, supra; Wiseman v. Kirkman,* 2d Dist. Darke No. 1575, 2002-Ohio-5384. In this case, there was neither. Accordingly, I would find that the trial court abused its discretion in determining that $200 in "discretionary damages" could be awarded to all class members based on Ganley's violation of the CSPA and in certifying a Civ.R. 23(B)(3) class under the CSPA based on this "creative" damages theory which is contrary to applicable law.

L.Ed.2d 308 (2013); *Cullen*, 2011-Ohio-6621 at ¶ 55 (statement in trial court's findings of fact and conclusions of law in class certification order that went "to the heart of the merits of the case" and was "possibly outcome determinative" was "inappropriate" at the class certification stage).

{¶74} Civ.R. 23 requires that prejudgment notice be provided to members of a (B)(3) class. Civ.R. 23(C)(2) provides:

> In any class action maintained under subdivision (B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (a) the court will exclude him from the class if he so requests by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

It is clear from the language of the rule that the notice required by Civ.R. 23(C)(2) is to be provided before judgment is entered on any claims of a Civ.R. 23(B)(3) class.

{¶75} Civ.R. 23(C) contains significant procedural protections required for due process. *See Dukes,* 131 S.Ct. at 2558-2559, 180 L.Ed.2d 374, citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). Without the requisite prejudgment notice, due process may be impaired.

Conclusion

**{¶76}** Like the majority, I am mindful that "due deference must be given" to a trial court's decision regarding class certification. *Marks*, 31 Ohio St.3d at 201, 509 N.E.2d 1249. However, a trial court's discretion in deciding whether to certify a class must be exercised within the framework of Civ.R. 23, and in the case of a putative class action under the CSPA, the requirements of R.C. 1345.09(B). *Hamilton*, 82 Ohio St.3d at 70, 694 N.E.2d 442; R.C. 1345.09(B). It is our job to ensure that the trial court "carefully appl[ies] the class action requirements" and conducts a "rigorous analysis" into whether the prerequisites for class certification have been satisfied. *Hamilton* at 70. Where classwide relief is sought for an alleged violation of the CSPA, the requirements of R.C. 1345.09(B), as well as the requirements of Civ.R. 23, must be met.

**{¶77}** "'A determination by a trial court regarding class certification that is clearly outside the boundaries established by Civ.R. 23, or that suggests that the trial court did not conduct a rigorous analysis into whether or not the prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion.'" *Mozingo v. 2007 Gaslight Ohio, LLC*, 9th Dist. Summit Nos. 26164 and 26172, 2012-Ohio-5157, ¶ 8, quoting *Hill v. Moneytree of Ohio, Inc.*, 9th Dist. Lorain No. 08CA009410, 2009-Ohio-4614, ¶ 9. Likewise, "'[w]here the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its discretion.'" *Howland v. Purdue Pharma L.P.*, 104 Ohio St.3d 584, 2004-Ohio-6552, 821 N.E.2d 141, ¶ 26, quoting *Warner v. Waste Mgt.*, 36 Ohio St.3d 91, 99, 521 N.E.2d 1091 (1988), fn. 10.

**{¶78}** Based upon my analysis, for the reasons set forth above, I believe those circumstances exist here. I do not believe that prerequisites to class certification under Civ.R. 23(A) and R.C. 1345.09(B) were met in this case. I would, therefore, find that the trial court abused its discretion in certifying the Civ.R. 23(B)(2) and (B)(3) CSPA class in this case and would reverse the trial court's order granting class certification.